## Rush *versus* Able.

1. Extra work done and materials furnished by a contractor during the performance of his agreement, may be included in and constitute a part of his claim, if the claim be filed within six months after the completion of the contract. Though outside the contract, they are so closely connected with it that they have always been included, in filing the claim, with those done and furnished under the contract.

2. All that is required to validate a mechanics' lien, is such certainty as will enable those interested to discover during what period the materials were delivered, or the work done, so as to individuate the transaction.

3. Where an architect claims to have a lien for charges and fees, he must show work done for which the statute gives a lien; and such work is not shown by the name of his calling. Especially should the kind of work be set forth distinctly, when it is claimed as extra work by the contractor. Bank *v.* Gries, 11 Casey 423, distinguished, and Price *v.* Kirk, *ante*, page 47, followed.

April 4th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Northampton county :* Of January Term 1879, No. 240.

On December 27th 1873, S. P. Rush & Son, house-carpenters, filed a mechanics' lien against Edward Able, owner or reputed owner, and contractor, and a building known as Able's Opera House, in the borough of Easton. Accompanying the claim, and made a part thereof, was the following bill of particulars :

" 1873.

June 28.  To building Opera House in the Borough of Easton, Northampton county, Pennsylvania, and furnishing the said materials for the same, including excavations, stone, mason-work, marble, marble-work, bricks, brick-work, iron-work, carpenter-work, lumber, slate and roofing, plastering, plastering materials, hardware, painting, painting materials, glass, glazing, sky-lights, gas-fitting, plumbing, seats, upholstering, upholstering materials, oil-cloth, turning, carving, mouldings, tin-work, scenery, drop-curtain, cordage and cartage, as per agreement, dated June 14th 1872, and the supplement thereto.   $53.644.77

BILL FOR EXTRA WORK AND MATERIALS.

1873.

| Feb. 19. | | |
|---|---|---|
| Bill of coal and carting same | . . . | $389.50 |
| Extra carting by Bercaw | . . . | 18.00 |
| Jacob Rafferty, mason-work | . . . | 2.50 |
| P. Correll, lime bill . | . . . . | 43.93 |
| Bill of Phillipsburg Iron Co. | . . . | 794.30 |
| Three feet of brick-work over ball-room, extra, at $15.50 per M. . | . . . | 369.76 |
| 60 yards of plastering to same | . . | 21.00 |
| 3 window frames on Wagener's line | . . | 80.00 |
| Extra door on clothing store | . . | 30.00 |
| Large windows on Wagener's line | . . | 53.00 |
| 24 lights of glass, 18 x 34, at $1.08 | . . | 25.92 |

[Rush *v.* Able.]

| | | |
|---|---|---|
| Trimming, fitting and hanging sash . . | $20.00 | |
| Sash-weights, cord and hardware . . | 11.95 | |
| Painting and glazing . . . . . | 15.00 | |
| Carpenter-work and lumber, sky-lights in | | |
| floor, &c., setting glass . . . . | 50.00 | |
| Glass in floor . . . . . . | 130.00 | |

&c.,     &c.,     &c.

EXTRA WORK ON STAGE.

| | | |
|---|---|---|
| 23 days by G. Householder, making traps, extra scenery, set pieces and paint frames and getting stage ready for night performances, at $3.75 . . . | 86.25 | |
| 1 day by Householder, 2 days by men, at $5.00 | 15.00 | |
| 63 hours night work . . . . . | 31.50 | |
| 72 papers of tacks, at 8 cts. . . . . | 5.76 | |
| 70 feet poplar bds. for profiles, at 7 cts. . | 4.90 | |
| 3 lbs. of nails, at 7 cts. . . . . | 21 | |
| 1 gross of one and a half-inch screws . . | 75 | |
| 2 papers two-inch clout nails . . . | 60 | |
| 9 sheaves for traps, &c. . . . . | 9.00 | |
| 15 counter weights for traps and 6 for paint frames . . . . . . . . | 43.25 | |
| 10 lbs. of nails, at 7 cts. . . . . | 70 | |
| Extra boarding for Householder for extra time | 19.60 | |
| Cordage for traps and paint frame . . | 12.44 | |
| Smith work by W. Thatcher . . . | 47.78 | |
| 1151 ft. of lumber for traps and paint frame, at 7 cts. . . . . . . . | 80.57 | |
| Philip Stern, paper muslin . . . . | 35.49 | |
| 700 yards plastering on stage, at 35 cts. . | 245.00 | |
| T. M. Lesher & Bro's extra bill . . . | 3701.12 | |
| Plush for rolls . . . . . . | 100.00 | |
| Extra glass in bulks . . . . | 101.00— | 7944.40 |
| Architect's charges and fees . . . | | 3617.65 |
| | | |
| Aggregate price . . . . . . | | $65,306.82 |

The work was commenced on or about the 14th day of June 1872, and finished on the 28th day of June 1873, on which day the last was done, in which time said materials also were furnished."

On May 20th 1876, on petition of the Merchants' Bank of Easton, a lien creditor, the court granted a rule to show cause why the lien should not be stricken off. On July 1st 1878, after argument, the court (Meyers, P. J.), made the rule absolute, in an opinion, inter alia, saying:

"The question then, is, have the plaintiffs complied in respect to said extra work and materials, with the Act of 1826. This act provides, inter alia, 'that every claim must set forth the amount or sums claimed to be due, and the nature and kind of the work done, or the kind and amount of materials furnished, and the time when the materials were furnished, or the work was done, as the case may be.' On reading the statute, it would seem that the meaning of the language would scarcely admit of any doubt that nothing less than

[Rush *v.* Able.]

a full, precise and distinct statement of the nature or kind of work done, and the kind and amount of materials furnished, and the year, month and date when so done and furnished, would be a full compliance with the statute. On the question of the construction the books are full of cases. Many of them are apparently conflicting, and some of them difficult, if not impossible to be reconciled with each other. It must be observed, however, that some of the decisions are under the Act of 1845; others are raised on the trial, such trial being held a waiver of all defects; others on a motion to strike off the lien, or on demurrer, and still others on a special Act of Assembly applicable only to certain localities. I have examined with care, probably every Pennsylvania case having any direct or remote bearing on the question. * * * In some of them, reasons are given at considerable length and with great force as to the necessity for such certainty, viz.: to individuate the work and materials, by description, quantity and dates, so as to protect the owners of property and others interested against error and imposition. SERGEANT, J., in Witman *v.* Walker, 9 W. & S. 186, in speaking of this provision of the statute, says: 'that the amount or sum claimed to be due and the nature or kind of work done, or the kind and amount of materials furnished, and the time when the materials were furnished or the work was done, are, or ought to be within the peculiar knowledge of the claimant from his books or otherwise, and must be furnished by him when filing his claim. When dispute arises they are essential to the owner of the building, the purchaser and lien creditor to enable them to trace out the truth of the claim and guard against error or imposition. * * * Where, as often is the case, a contractor carries on several dispersed buildings and work is done and materials furnished for them by the same mechanic or material-man, the enumeration in the claim of these items furnishes the best means of ascertaining how far the particular building in question is liable.' This language is specially applicable to this lien. Considering that here is a special contract for $53,644.77 for work done and materials furnished, and while in the process of its erection extra work is done and materials furnished in and about the erection of the same building for $11,562.05, it will be seen at a glance how necessary it is that there should be strict compliance with the statute in specifying, as to said extra work and materials, the nature and kind of said work, the kind and amount of materials, and the time the same was done and furnished. If in an ordinary case the law requires this to be done to prevent error or imposition, how much more is it necessary where a special contract for work and materials is in process of erection concurrently with extra work done and materials furnished outside of the special contract in the erection of the same building? How easily could a claimant introduce in his bill for extra work and materials, such work and materials which properly belongs to the special contract,

[Rush *v.* Able.]

if not compelled to keep an accurate account of the extra work and materials, the nature, kind and amount thereof and the time when done and furnished. Even that might fail to protect the owner and parties interested against error and imposition, but it is the best which the law affords. It is true that many of the items as to kind and amount are sufficiently certain, while others are manifestly defective and deficient, as for example, the item 'Bill Phillipsburg Iron Co. $794.30;' 'T. M. Lesher & Bro., Extra Bill, $3701.12;' 'Architect's charges and fees, $3617.65,' and others. There is no reason why the plaintiffs could not have complied with these simple requirements as to kind, quality, amount and time. Having failed to do so, we have come to the conclusion, somewhat doubtingly as to the law, and may also add reluctantly (as such claims are generally deemed meritorious), that so much of the lien relating to 'extra work and materials,' must be stricken from the record."

The claimants took this writ, assigning for error the order of the court making the rule absolute.

*Reeder & Reeder*, for plaintiffs in error.—The claim of lien filed shows that it is comprised of two parts; the first being for a specific sum, the amount being fixed by a special contract and amounting to $53,644.77, and the other a bill for extra work and materials amounting to $11,562.05. The order of the court below affects only the bill for extra work and materials. The first item in this bill bears date February 19th 1873. No other item is dated. Attached to the bill and immediately following the last item thereof, appears this sentence: "The work was commenced on or about the 14th day of June 1872, and finished on the 28th day of June 1873, on which day the last work was done, in which time also said materials were furnished." This is such a statement of time as sufficiently complies with the requirements of the Act of the 13th of June 1836: Driesbach *v.* Keller, 2 Barr 77; Hillary *v.* Pollock, 1 Harris 186; McCay's Appeal, 1 Wright 125; Bayer *v.* Reeside, 2 Harris 167; McClintock *v.* Rush, 13 P. F. Smith 204.

There are charges for work done and materials furnished which often enter into a bill of particulars, for which it is impossible to give a specific and exact date. Take, for instance, the item "architects' charges and fees, $3617.65" (which item is the most important one involved in this case). Work of this character begins cotemporaneously with the commencement of the building—indeed, often precedes any work whatever upon the building—and continues until the last nail is driven or the last brushful of paint applied. The architect's services in superintending the structure are often unnecessary for continuous weeks, and then again are necessary every day. His charges are never regulated by the time which he is required to be present during the erection of the building, but

[Rush v. Able.]

upon the actual cost of the structure.    This is the custom of architects everywhere.    How, then, can such charges be given a date in a bill of particulars, or how can such services be described other than as "architect's charges and fees ?"

Incident to nearly every contract for the erection of buildings for a specific sum is a bill for extra work and materials.    This bill is one springing out of the original contract by reason of changes in, and alterations of, the special contract, made as the work progresses, at the suggestion of the owner of the building himself.    By reason of the peculiar position of the contractor as owner of all the materials purchased for the work under the special contract, and both the material used in the extra work and under the special contract being taken from the common store, it is in most instances almost impossible, in some cases utterly so, for the contractor to ascertain the exact amount of material used or labor performed in the erection of the extra work until after the completion of the structure.

Where a builder is erecting a building not under contract, it is easy enough to file a lien; he files his liens as he keeps his account for the work in detail as it is performed.    But where the contract and the alterations or extra work are so connected that they are parallel to a certain extent, the same work being part under special contract and part in consequence of the alteration, how can he file his lien with the exactness required by the Act of 1836 ?

For these reasons we contend that the law should regard the bill for extra work as a contract springing from the special contract and running parallel with it, and should not require for such bill the same exactness they would require in a claim where there was no contract.

*W. S. Kirkpatrick* and *Robert I. Jones*, for defendant in error. —The bank petitioned to strike off this defective lien; this was the proper course.    Judgment-creditors are parties interested, and greater exactness and conformity is required against subsequent purchasers or encumbrancers than against defendants in mechanics' liens: Lehman v. Thomas, 5 W. & S. 263; Howell v. Philadelphia, 2 Wright 471; Hahn's Appeal, 3 Id. 409; McClintock v. Rush, 13 P. F. Smith 203; Lee v. Burke, 16 Id. 336.

On its face the claim declares expressly that the bill for extra work and materials, $11,562.05, was incurred more than six months before filing, and it is therefore void.    The claim is dated Dec. 26th 1873, but the lien was not filed until the 27th, and the averment "within six months last past," refers to the date of the claim, and not of the filing of lien: Ellice v. Paul, 2 Phila. R. 102.    The "extra bill" does not set out the time of doing the work or furnishing the materials, because February 19th 1873 is the date of only the first item, viz. : Bill of coal and carting same, $389.50.

On the other hand, if February 19th is assumed as the time when

[Rush *v.* Able.]

the whole of the extra bill was incurred, then surely it is all barred by lapse of time. At the end of the lien the following occurs: "The work was commenced on or about the 14th day of June 1872, and finished on the 28th day of June 1873, on which day the last work was done, in which time said materials also were furnished." There is no pretence that the work was done continuously, but, on the contrary, the lien expressly declares that it was not, nor under a continuous contract, for it is extra work, outside of and additional thereto. The statement above as to the commencement and end of the work, &c., is of no effect whatever as regards any of the items under the Act of 1836. It can refer only to the contract work. This court has so declared in Shields *v.* Garrett, 5 W. N. C. 120, a most carefully considered case. The Act of 1849 does not apply to our lien, but if it did there is no statement of time according to its provisions. The bill is confessedly for extra work, and the charges made in the lump. The beginning and ending of the whole work is given, not the beginning and ending of each charge, and this is a fatal defect: Shields *v.* Garrett, *supra;* Van Roden *v.* Campbell, 5 W. N. C. 126; Ellice *v.* Paul, *supra;* Smaltz *v.* Knott, 3 Grant 227. Many of the charges were not sufficiently stated, such as the architect's fees, and others.

Mr. Justice TRUNKEY delivered the opinion of the court, May 5th 1879.

Extra work and materials done and furnished by a contractor during performance of his agreement, may be included in and constitute a part of his claim, if the claim be filed within six months after completion of the contract. Though outside the contract, they are so closely connected with it, that they have always been included with those done and furnished under the contract, in filing the claim. As shown by the learned judge below, the lien will be continued if the claim be filed within six months after the extra work was done, but more than six months after work on the contract was completed. He was clearly right in holding the converse. Including contract and extra work in same lien subserves the interests of both contractor and owner, and it accords with such interests, as well as with the statute, that the claim may be filed within six months after the building is finished, even if one kind, in fact, was not within six months of the filing.

This claim states that the work and materials were done and furnished within six months last past, and refers to the bill of particulars as setting forth the time when they were done. At the foot of said bill is the following: "The work was commenced on or about the 14th day of June 1872, and finished on the 28th day of June 1873, on which day the last work was done, in which time said materials also were furnished." The lien was filed December 27th 1873. Prefixed to the first item, in the bill for extra, is the

[Rush v. Able.]

date Febuary 19th 1873, and all others follow without mention of time.    Doubtingly and reluctantly the court struck from the record so much of the lien as relates to extra work and materials, because of the plaintiff's failure to comply with the statutory "requirements as to kind, quality, amount and time."

In Bayer v. Reeside, 2 Harris 167, the claim set forth that the work and materials were done and furnished " within six months last past, to wit, between the 1st June 1848, and 1st April 1849," and the bill of particulars was without date.    The defendant demurred, assigning for cause that time was not well stated.    No question was before this court other than the validity of the lien, and the judgment was affirmed.    True, it is said in the opinion, that after a trial on the merits, technical objections are disregarded, but the demurrer was before trial and treated as raising the question as pointedly as would a motion to strike off.    That decision has not been overruled.    The date of a bill of particulars for materials "furnished within six months" was December 3d 1868, the time of filing ; in the margin to the first item was June 9th, without any year ; there was no date to any other item.    After a sheriff's sale of the premises, upon application of a subsequent lien-creditor, the court struck off the mechanics' lien, which judgment was reversed. " All that is required is such certainty as will enable those interested to discover during what period the materials were delivered, or the work done so as to individuate the transaction : Calhoun v. Mahon, 2 Harris 56.    " It has been more than once said we must not be hypercritical " when scanning this species of lien and estimating its sufficiency." Per BELL, J.: McClintock v. Rush, 13 P. F. Smith 203.    Both these cases were under the Act of 1836. Shields v. Garrett, 5 W. N. C. 120, was by a sub-contractor, and the claim was sought to be sustained under the Act of 1849, in force in Philadelphia and Chester counties.    Hahn's Appeal, 3 Wright 409, was a case under the Act of 1845, and relates to claims for work under contract.

In the light of Bayer v. Reeside, and McClintock v. Rush, it is manifest there is no departure from previous decisions in holding that no portion of this lien is defective because of insufficient setting out of time.    The rule is certainty to a common intent, not precision, in statement.    If the entire bill is to be deemed of the date, February 19th 1873, it cannot be struck out, for the contract work was done within six months of filing the claim.    But it is unreasonable to say the whole bill is of that date, for on its face it is patent that the items of work and material were at different times. That really applies to the bill of coal, to the other items only by fiction.

The extra bill includes many things apparently within the contract for erection of the building, but where they are well stated they cannot be struck off on motion.    The claimant may be able

[Rush *v.* Able.]

to show, at trial, by sufficient proofs, that they are without the contract and furnished at the owner's request.

Does the phrase, "architect's charges and fees" exhibit the nature and kind of work he did? The claimants so affirm, resting on authority of The Bank of Pennsylvania *v.* Gries, 11 Casey 423. There the architect had a contract to perform labor in and about the erection of the buildings, of which this court said, "This is labor, mechanical labor of a high order, contributing its proportionate value to the beauty, strength, and convenience of the edifice." In same opinion it is said, "A mere naked architect, and who may be such without being an operative mechanic, who draws plans in anticipation of building, usually could hardly be supposed to be within the act which provides a lien for work ' done for or about the erection or construction of the building.'" In Price *v.* Kirk, C. P. Chester county, *ante*, page 47, it was decided that a claim by an architect, for preparing drawings and specifications for a building, is not the subject of a mechanic's lien. Butler, P. J., gave conclusive reasons for the judgment, which has just been affirmed in this court. When an architect claims to have a lien for charges and fees he must show work done, for which the statute gives a lien, and such work is not shown by the name of his calling. Especially should the kind of work be set forth, distinctly, when it is claimed as extra by the contractor. It will hardly be presumed that he is entitled to a lien for fees for superintending and directing himself in the performance of his own contract.

The items, "bill of Phillipsburg Iron Co." and "T. M. Lesher & Bro.'s extra bill," contain no sign of any kind of work or material in the construction of the building. It is vain to surmise what they are for—the statute requires expression, not occultness.

The "bill of coal and carting same" exhibits the kind of materials ; it is not a subject for mechanics' lien. Of like character is "extra boarding for Householder for extra time."

> Judgment reversed, except as to the following items, namely, "bill of coal and carting same, $489,50; "bill of Phillipsburg Iron Co., $794.30 ; " extra boarding for Householder for extra time, $19.60; " T. M. Lesher & Bro.'s extra bill, $3701.12 ;" "architect's charges and fees, $3617.65 ;" and as to these excepted items, affirmed, and *procedendo* awarded.