CHARLES C. SCHEIBLE v. GEORGE H. SCHICKLER and Others.[1]

January 21, 1896.

Nos. 9789—(218).

| 63 | 471 |
| 72 | 468 |
| f74 | 32 |
| 63 | 471 |
| 77 | 517 |

**Mechanic's Lien—Statement—Time of Filing.**

Plaintiff made a contract to furnish and place in defendants' houses furnaces of a certain kind, number, and size, together with the proper connections therefor. He fully performed this contract, except that the furnaces did not heat the houses so as to fulfill a warranty made as a part of the contract. He subsequently made a new agreement, whereby, in satisfaction of all damages

[1] Reported in 65 N. W. 920.

for breach of the warranty, he agreed to substitute other furnaces in place of those already furnished, and this he did. He filed no lien statement until within 90 days thereafter. In an action to foreclose a mechanic's lien for the contract price, *held*, such lien statement was filed in time.

**Findings and Proof—Variance.**

*Held*, the variance between the proof and findings of fact is so great that the order granting a new trial should be affirmed.

Appeal by plaintiff from an order of the district court for Ramsey county, Egan, J., granting the motion of defendant Benz for a new trial. Affirmed.

*James H. Barnard*, for appellant.

*Briggs & Countryman*, for respondent.

CANTY, J. Action to enforce a mechanic's lien. On July 7, 1890, the defendant Schickler was erecting eight houses on eight adjacent lots owned by him in St. Paul. On that day he entered into a written contract with plaintiff and his partner whereby they agreed to furnish and place in each of these houses a hot-air furnace of a specified kind, number, and size, with certain specified connections; the furnaces in the two end houses to be of larger size than the furnaces in the six middle houses; and in consideration thereof Schickler agreed to pay therefor the sum of $920. This contract also contained the following warranty:

"As an inducement for said party of the first part [Schickler] to purchase said furnaces from said second parties [plaintiff and partner] said parties of the second part hereby warrant that all of said furnaces are good and durable furnaces, and will, when the same are placed by them, heat all the rooms of said houses, as the same are designated on the plans therefor, or as agreed, to a continuous temperature of seventy (70) degrees Fahrenheit in the coldest weather, without injury to the furnaces; and that everything furnished and constructed and placed in said houses, and everything done therein by said parties of the second part, shall be first class in every respect and satisfactory to said party of the first part."

After the contract was partly performed, plaintiff's partner transferred all his interest in and under the contract to plaintiff, who completed the work in January, 1891. Schickler then gave his note to plaintiff for the amount of the contract price. Schickler's

tenants occupied the houses in February and March, and about this time Schickler informed plaintiff that the furnaces in the six middle houses did not fulfill the warranty, and for this reason refused to pay his note. . In July, 1891, the houses and lots were conveyed by Schickler to the defendant Benz. On October 16, 1891, plaintiff and Schickler entered into the following written contract, signed only by Schickler:

"St. Paul, Minn., Oct. 16, 1891.

"This is to certify that C. C. Scheible will be released from any further responsibility or changes or guaranties on furnace work or heating in building known as Lincoln Terrace, on corner of Lincoln Ave. and Victoria St., after said C. C. Scheible furnishes 6 new furnaces, and connects same, which is to be done and completed on October 24th, 1891, the furnaces to be No. 624 steel-dome Richmond, heating capacity same as end house. When this is done it releases C. C. Scheible of any and all guaranties, damages, and changes. Also that there is due the said C. C. Scheible on the job when complete as above stated eight hundred and sixty-three $^{45}/_{100}$ ($863.45), for which I gave a 45-day note, payable at the Merchants National Bank, St. Paul, Minn., and is due him, said C. C. Scheible, on that date.

"P. S. This cancels all former guaranties on said block of houses.

"St. Paul, Oct. 19–91. George H. Schickler."

There is evidence also tending to prove that a verbal agreement of the same import was made between plaintiff and Schickler before the property was conveyed to Benz and perhaps as early as March of that year; that Benz had full notice and knowledge of this agreement at the time he purchased, and that he and Schickler then agreed that Schickler should have the furnaces changed accordingly.

Pursuant to said last-named written agreement, plaintiff took the old furnaces out of the six middle houses, and replaced them with the larger ones, and fully performed that agreement on October 24, 1891. Within 90 days thereafter he filed the proper statement of lien. The trial court found for plaintiff, then granted defendants a new trial, and from the order granting the same plaintiff appeals.

The statute provides that the lien statement shall be filed within 90 days after the last item of labor or material is furnished,[2] and the question raised on this appeal is whether or not the lien statement was filed in time. We are of the opinion that it was. The second contract, and the performance of the same, amounted to a modification of the first contract, and a performance of the contract as so modified. A lien statement filed before this last performance would not have availed plaintiff in this action, and we are of the opinion that it was not necessary for him to file two lien statements to enable him to enforce a lien for one cause of action. The lien as now claimed must be for the reperformance or performance of the contract as modified, and we are of the opinion that for this plaintiff has a lien, and that the time to file the statement of the same commenced to run from the time of such reperformance. The case is quite similar in principle to that of Worthen v. Cleaveland, 129 Mass. 570, where the court held that the time to give notice of the lien commenced to run from the time of the second performance in fulfillment of the warranty.

But the trial court finds only the fact of making the first contract, and the performance of the same, "and the subsequent modification thereof"; but does not find what such modification was, or that any second contract was ever made or performed. We are of the opinion that the variance between the proof and the findings is so great that the order granting a new trial should be affirmed. So ordered.