Joplin. Sash & Door Works v. Oklahoma Pres. College for Girls et al.

## JOPLIN SASH & DOOR WORKS v. OKLAHOMA PRESBYTERIAN COLLEGE FOR GIRLS *et al.*

No. 3841.    Opinion Filed October 15, 1912.

Rehearing Denied January 7, 1913.

(129 Pac. 40.)

1.  **MECHANICS' LIENS**—Proceedings to Perfect—Filing Statement of Claim. A written contract was entered into between G. Company, a contractor, and J., a sub-contractor, whereby the latter was to furnish a certain list of building material, to be used in the construction of a college building for a third party. Prior to the completion of said building it was discovered by the contractor's foreman that a small list of materials called for in the original building plans and specifications had been omitted from the contract. These materials were of the same kind as those included in the original list, and, when the omission was discovered, were ordered of the subcontractor who shipped them to the contractor, eighteen days after the last material included in the original list was furnished. No new contract was made. These materials were furnished during the progress of the work on the building, and were used therein, and reasonable charges made therefor; and all were included in one settlement with the contractor. Held, that all related to one contract; that the furnishing of the additional materials did not constitute the transactions separate and distinct, or independent contracts, within the meaning of section 6153, Comp. Laws 1909, requiring that the subcontractor shall, within 60 days after the date upon which material was last furnished under the subcontract, file with the clerk of the district court, etc., a verified statement setting forth the amount due, etc.; and that the statement required being filed within 60 days from the date that the materials were last furnished, including the second list, was filed within time, and constituted in this regard a compliance with the statute.

2.  **SAME**—Time for Filing Statement. Where material is furnished, all going to the same general purpose, as the building of a house or any of its parts, though such material be ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be considered as a unit, or as being but a single contract.

(Syllabus by Sharp, C.)

*Error from District Court, Bryan County;*
*Summers Hardy, Judge.*

Action by the Oklahoma Presbyterian College for Girls and others against the Joplin Sash & Door Works. From a judg-

ment for plaintiffs, defendant Joplin Sash & Door Works brings error. Reversed and remanded.

February 16, 1911, the defendants in error, the Oklahoma Presbyterian College for Girls of Durant, Okla., a corporation, and the Executive Committee of Home Missions of the Presbyterian Church in the United States, brought suit in the district court of Bryan county under the provisions of section 6160, Comp. Laws 1909, naming the M. J. Gill Construction Company, of Ardmore, Okla., the National Surety Company, Kansas City, Structural Steel Company, Choctaw Pressed Brick Company, Pearce Bros., Mrs. Laura Beilharz, Will Leach & Co., Steger Lumber Company, A. L. Severance Hardware Company, Grider-Potts Hardware Company, A. H. Wolff, Bortoli Mosaic & Tile Company, B. M. McDaniel, S. O. Maxey, Joplin Sash & Door Works, Southern Architectural Cement Stone Company, Durant Drug Company, the United Sash & Door Company, J. R. Price, and Fraley's Planing Mill of Ardmore, Okla., as defendants. Personal judgment was sought against defendants M. J. Gill Construction Company and the National Surety Company. It was further asked that the other defendants be required to appear and prove their liens, and that the validity thereof be determined by the court. The defendant Joplin Sash & Door Works appeared and filed its answer, counterclaim, and cross-petition, and prayed judgment against its codefendants M. J. Gill Construction Company and the National Surety Company for the balance due on its account, and for judgment declaring a first and prior mechanics' lien upon the real estate and buildings of the plaintiffs, and that said lien be foreclosed and the premises ordered sold and the proceeds of the sale applied to the discharge of its judgment. To this answer and cross-petition, the defendant National Surety Company demurred, both upon the ground that several causes of action were improperly joined therein, and that said action and cross-petition did not state facts sufficient to constitute a cause of action against said demurring codefendant. The demurrer was sustained on the first ground. Reply was filed, and upon trial of the merits before the court special findings of fact and conclusions of law were submitted and filed,

and judgment entered thereon.   Among other findings the court found that the materials furnished by the Joplin Sash & Door Works under its written contract amounted to $2,206, and that the last item of this account was furnished on the 8th day of September, 1910, and that under a subsequent oral contract other materials, amounting to $41.30, were furnished and used in the college building, and that the last material under said latter contract was furnished on the 26th of September, 1910.   The lien claim or statement was filed November 22, 1910, and included the balance due on the written contract, and what was termed the claim for extras furnished September 26th, amounting to $41.30.

*Hays & Caudill,* for plaintiff in error.

*C. C. Hatchett* and *Robert Crockett,* for defendant in error Presbyterian College for Girls.

Opinion by SHARP, C. (after stating the facts as above). In view of the conclusion that we have reached, it will be unnecessary to consider but one of the numerous assignments of error:   Was the material furnished under a single, separate, and distinct contract?   If so, upon that ground the judgment of the trial court should be reversed.   The last item under the original written contract was furnished September 8, 1910, or more than 60 days prior to the filing the lien statement.   The lien of plaintiff in error is one provided for by section 6153, Comp. Laws 1909, which provides that any person who shall furnish material under a subcontract with the contractor may obtain a lien upon the land of the owner for the amount due him for such material and labor by filing with the clerk of the district court of the county in which the land is situated, within 60 days after the date upon which the material was last furnished under such subcontract, a statement verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property upon which a lien is claimed; and further provides for service of notice of lien upon the owner.

The contract between the plaintiff in error and the M. J. Gill Construction Company, dated January 22, 1910, was predicated upon a list furnished by G. F. Yarborough, foreman of the construction company, according to plans and specifications prepared by H. A. Overbeck, architect. The written contract was in the form of a proposition or offer to furnish materials' according to the foreman's list, and was accepted in writing by the construction company. It included millwork such as was provided for in the plans and specifications for the college building, and defined what kind or class of material constituted millwork. Articles of the class named, as well as any other material not therein specified, were not included in the estimate (afterwards reduced to a contract), and if furnished should be charged extra. The items originally ordered were furnished June 7, August 13, and September 8, 1910. While the work was in progress it was discovered that the bill was short through an oversight of the foreman of the construction company. Acting upon instructions from the architect, an additional order for these omitted materials was made, and the same were furnished September 26, 1910, or eighteen days after the shipment of the last item under the written contract. The building had not been completed and was not made ready for occupancy for some time thereafter.

No new contract was made, either between the owner and the contractor, or the latter and the subcontractor; simply an order for additional materials. This, being received, was filled, and a reasonable charge made for the materials so furnished. These additional materials were of the same kind or similar to those included in that contract. They in effect supplemented the contract. All related to the one contract, entered into the one building, were furnished during the progress of the work and at a time relatively near the furnishing of the first ordered materials. The transactions involved one settlement, and were in a way connected and continuous in their nature. The last items were furnished before the expiration of 60 days from the date of furnishing the last material under the original list. Extras were contemplated, though not specifically provided for in

the original contract. The mere fact of furnishing additional materials subsequent to filling the original order is not sufficient of itself to constitute the transactions as separate and distinct, or independent contracts, within the meaning of the statute limiting the time for filing liens. Herein we think the trial court erred. What the contract in fact was, and whether the contract thus formed is entire and continuous, presents a mixed question of fact and law. *Page v. Bettes,* 17 Mo. App. 366; Phillips on Mechanics' Liens, sec. 325. And while the finding of the court was that, as a question of fact, there were separate contracts, we feel that the court erred in concluding that the transactions, though separate in point of time, constituted, within the meaning of the statute, separate and distinct or independent contracts. The total value, according to the testimony, of the materials furnished by the subcontractor, was \$2,247.30. Of this amount the written contract included \$2,206.00, leaving a balance to be supplied or but \$41.30. That items of the same character amounting to this small sum and intended for the same general use should be left open and made the subject of a separate contract, either with the present claimant or a third party, will not be presumed.

In this connection it is said in Phillips on Mechanics' Liens, par. 229:

"But when work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire sale, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract."

On the same subject it is said, in Rockel on Mechanics' Liens, par. 98:

"As a general rule it may be stated that deliveries, even if made under separate contracts, if the work is continuous, will be considered as one, and the time limit for filing will date from the last item furnished."

Treating the last delivery as a claim for extras, the same author, in paragraph 99, says:

"If extra work is done or extra material furnished without special contract in the execution of the principal contract, they will be considered as a part of the principal contract, and the time for filing the statement will date from the day when the extras were furnished. .* * * As to what will be included in the subcontractor's contract as a continuing one, or as to how it may be kept alive by successive deliveries, the same rules will generally be applied as to the principal contractor."

In discussing this same subject it is said in Jones on Liens, vol. 2, sec. 1441:

"Where a mechanic furnishes labor and materials under different contracts which relate to similar kinds of work, and are in fact additional to the original contract, and are made before the work under that contract is completed, the services are regarded as continuous, and a statement may be filed within the time limited after the entire work is done, though the work under some of the contracts has ceased more than that time before the filing of the statement. Thus, if a mechanic, while erecting a building under a written contract, orally agree with the owner to build an additional room, and does build it, he is entitled to a lien on the whole building for the work done under the oral agreement. Extra work done, and extra material furnished, by a contractor during the performance of his agreement, may be included in, and made a part of, his claim, if this be filed within the time allowed by statute. Such work and materials, though outside the contract, are so closely connected with it that, in filing the claim, they may be included with the work done and materials furnished under the contract. A contract for extra work, or for the extension of time, under a building contract, need not be in writing."

In *Union Trust Co. v. Casserly et al.,* 127 Mich. 183, 86 N. W. 545, it was contended that the testimony showed that the contract was for the delivery of a specific amount of material, and that the delivery of other items was under separate contracts, and that therefore under the statute a lien should have been filed within 60 days after the furnishing of each item. The court held to the contrary and adhered to the rule announced in Phillips on Mechanics Liens, *supra.*

In *Darlington Lumber Co. v. Harris,* 107 Mo. App. 148,

80 S. W. 688, the earlier authorities of the state are reviewed. It was contended that the last material furnished was under a new and distinct contract for extra work. It was held that where a materialman agreed with the contractor on an estimate of lumber to be used in a building, but furnished considerable additional lumber under the contract, and where lumber was ordered for extra work for which the contractor had made separate contract with the owner of the building, made no fresh arrangement with the contractor, and knew nothing of his new contract with the owner,and charged the material on the running account with the contractor, which had been continuous from the time the latter began to build the building, its entire contract with the contractor would be treated as a continuous and connected transaction, and the lien limitation would not begin to run until the date of the last item. There, as here, the material was charged on a running account with the contractor. It was said by the court:

"These facts bring the case within the orbit of decisions holding that when materials are furnished for the same improvement, in installments and at intervals, but the parties intend them to be included in one account and settlement, the entire account will be treated as a continuous and connected transaction, and the lien limitation begins to run from the last item of it."

In *Frankoviz v. Smith,* 34 Minn. 403, 26 N. W. 225, the same general rule is announced, and it is said in the syllabus:

"In a claim for mechanic's lien which includes different items of material delivered at different times, the account is to be treated as a unit, and the time within which the account and affidavit must be filed for record begins to run from the date of last item, providing they were all delivered for the same job of work; as for constructing the building, if that was the job in hand, or for doing the same job of repairing. But if some of them were delivered for some other work—as where the construction is completed, and afterwards some further thing to be done is determined on—the furnishing of such items cannot suspend the running of the time for filing as to the account for constructing."

In *Coughlan v. Longini,* 77 Minn. 514, 80 N. W. 695, it was

held that after a contract is made to furnish specified materials, to be used in the construction of a building, an implied understanding to furnish extras, if called for, may be inferred from the circumstances of the case. In such a case, the extras furnished and other material formed one continuous account, and the time fixed by the statute in which to file the lien statement runs from the date of the last item of the whole account. *Miller et al. v. Batchelder,* 117 Mass. 179; *Hofer's Appeal,* 116 Pa. 360, 9 Atl. 441; *Brick Co. v. Stout,* 45 Minn. 327, 47 N. W. 974; *Scheible v. Schickler,* 63 Minn. 471, 65 N. W. 920; *Perkins v. Boyd,* 16 Colo. App. 266, 65 Pac. 350; *Rush v. Able,* 90 Pa. 153; *St. Louis National Stock Yards v. O'Reilly,* 85 Ill. 546; *Jones v. Swan,* 21 Iowa, 181.

The statute, as already shown, provides that lien statements shall be filed within 60 days after the date upon which material was last furnished under the subcontract, and this, we hold, under the testimony, was September 26, 1908. The filing of the lien with the clerk of the district court of Bryan county on November 22d thereafter gave to the subcontractor a lien upon the building and grounds in and upon which its materials were used.

The court therefore erred in its decree, in holding that the claimant was not entitled to a lien upon the property of plaintiffs for the balance due under the list forming a part of the original written contract, and the judgment of the trial court should be reversed, and the cause remanded, with instructions to cause to be entered a judgment in favor of the Joplin Sash & Door Works, subjecting the lands and college building erected thereon to the payment of its judgment against the construction company, and to determine the order of payment among the various lien claimants whose liens have been established by final judgment, and for further proceedings in conformity with this opinion.

AMES, C., did not participate in the consideration of the case.

By the Court: It is so ordered.