The CUSHING COUNTRY CLUB, a Corpora-
tion, Plaintiff in Error,

v.

The BOARDMAN COMPANY, a Delaware
Corporation, Defendant in Error,

No. 39731.

Supreme Court of Oklahoma.

April 9, 1963.

Rehearing Denied May 14, 1963.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiff in error.

Swank & Swank, Fred J. McDonald, Stillwater, for defendant in error.

JOHNSON, Justice.

In the early part of 1959, the Cushing Country Club contracted with Loftin Construction Co., Inc. to build a swimming pool on the premises of the club near Cushing, Oklahoma. Construction was begun in May, 1959. In August, 1959, the pool was tendered to the club. After testing the pool, the club rejected it as incomplete and not constructed in compliance with specifications. Alterations and additional materials were added to the pool in February, 1960, by Loftin Construction Co.

The defendant in error, Boardman Company, hereinafter referred to as plaintiff, furnished materials used in the construction of the pool in June, July and August, 1959.

After the rejection of the pool, the Boardman Company on February 2, 1960, furnished materials and labor to complete the pool according to specifications. The materials so installed consisted of a flow-rate indicator and strainer basket. These were not installed to replace defective materials previously installed. They were called for by the original contract and had never been installed. On February 9, 1960, the Boardman Company filed its lien for a total sum of $3,253.73, covering all materials and labor furnished by Boardman Company in the construction of such pool.

On June 17, 1960, plaintiff filed suit seeking judgment for its debt and foreclosure of lien. Upon trial the court rendered judgment for plaintiff. After the overruling of motion for new trial, defendant Cushing Country Club appeals.

Only one proposition for reversal is urged, namely:

"The trial court erred in allowing the plaintiff, Boardman Company, a lien for the value of that material furnished between June 5, 1959, and August 17, 1959, when the evidence in the trial court proved conclusively that the material furnished in February, 1960, was furnished pursuant to a completely separate and distinct transaction."

The statute under which a subcontractor's lien is obtained is 42 O.S.1961 § 143. The pertinent language with which we are concerned here is: " * * * by filing with the clerk of the district court * * * within ninety (90) days *after the date upon which material was last furnished or labor last performed under such subcontract,* * * *." It is necessary to determine whether the items furnished and labor last furnished were in connection with the entire subcontract or were only the items furnished in February, 1960, or a separate arrangement so that the furnishing of same did not authorize a lien for all of the materials furnished and labor performed in the summer of 1959.

Ordinarily, the furnishing of labor or the materials *to remedy a defect subsequent to completion* of contract will not extend the time for filing a lien. See Norman v. Hearne and Tittle, 145 Okl. 217, 292 P. 332; Taylor Bros. v. Gill, 126 Okl. 293, 259 P. 236, 54 A.L.R. 979; Jones v. Balsley, 27 Okl. 220, 111 P. 942.

But such is not the case here. This is not a case where defective materials or parts were replaced. In this instance, the items required by the specifications had never been furnished. The contract was

not fully performed nor the project complete until these items were installed.

Two things must be determined: 1. Is the finding of the facts by the trial court sustained by the evidence; and, 2., what is the law applicable to the facts as found to exist.

In considering the first of these, it should be borne in mind that the trial court had before it the witnesses. It could judge their demeanor and apparent truthfulness. Therefore, it is not incumbent upon this court to disturb the trial court's findings unless against the clear weight of the evidence. In Thomas v. Owens, 206 Okl. 50, 241 P.2d 1114, we said:

"In an action of equitable cognizance, presumption is in favor of the trial court's finding, and it will not be set aside on appeal unless against the clear weight of the evidence."

Again, in The H. E. Leonhardt Lumber Co. v. Ed Wamble Distributing Co., Okl., 378 P.2d 771, we said:

"Whether a lien statement is filed within the statutory time limit is a question of fact to be determined from the evidence."

The particular portion of the record under attack reads:

"The Court finds from the evidence that the swimming pool had not been completed so as to comply with the contract entered into between defendant and Loftin Construction Company, and in February of 1960 the plaintiff with the full knowledge and consent and at the request of defendant, Cushing Country Club, performed additional work as set forth in the exhibit, and also at the consent of the Loftin Construction Company; That this was done to complete the contract of Loftin Construction Company with the defendant and to comply with the requirements of the State Health Inspector, and therefore this case is governed by the principles of law as indicated and the annotation of 54 ALR 988 start-on that page and the cases thereunder, supported by the authority of [Joplin Sash & Door Works v. Oklahoma Presbyterian College for Girls, 36 Okl. 547], 129 Pac. 40, an Oklahoma case, which was confirmed in [Consolidated Cut Stone Co. et al. v. Seidenbach et al., 181 Okl. 578], 75 Pac.(2) 442. * * *"

The evidence in the record supporting the finding of the court may be epitomized as follows:

Paul Witt, an employee of The Boardman Company, testified as follows:

\* \* \* \* \* \*

"Q. Now, had you previously delivered a Flow Rate Indicator to Mr. Loftin?

"A. Mr. Loftin—yes, I delivered several throughout the year. He had picked up one specifically for the Cushing job, but I believe they said they moved it to the Town House Motel in Fayetteville, Arkansas, and would need to replace this one.

"Q. But this had not been put on this job until you put it on in February, 1960?

"A. Not to my knowledge, it had not been installed.

\* \* \* \* \* \*

"Q. Now, as a result of that did you attach this Filter Flow device that you testified that you installed on February 3rd, 1960?

"A. Yes.

"Q. Did that complete, then, your subcontract with Mr. Loftin?

"A. Yes.

"Q. Now, were you doing this as an individual, Mr. Witt, or were you doing it as an employee of the Boardman Company?

"A. As an employee of the Boardman Company.

"Q. Did you bill him individually for your services, or did the Boardman Company bill him?

"A. Yes.

"Q. I'll ask you if that is the last item that appears in our Exhibit 'A' attached to the petition showing the material furnished, the one dated February 3rd, 1960, for $51.00?

"A. Yes.

*   *   *   *   *   *

"Q. Mr. Witt, in the opening statement of Mr. Newcombe he indicated that the pool had opened in August of 1960, and will you tell the Court what actually happened in August of 1960 in regard to this swimming pool as to whether or not it opened or did not open?

"A. In approximately the middle of August the basic structure of the pool, disregarding the mechanical part, was complete to a certain extent. The Cushing Country Club wanted to use the pool for a couple or three weeks just probably to keep the members off of their neck, which they were very anxious to get in the swimming pool, and they made an agreement with Mr. Loftin which would not constitute any acceptance of it on their part and put water in the pool and used it until the first of September, or thereabouts, they had a couple or three weeks' use of the pool.

"Q. Was that pool complete at that time?

"A. It was not.

"Q. Now, after September of 1959 was there any necessity to complete the pool?

"A. None.

"Q. And why was that?

"A. The pool wasn't in use, it was closed for the winter, and they had an agreement with Mr. Loftin that he would complete construction throughout the winter months.

"Q. And that was all right with you, was it?

"A. It was all right with me, yes."

*   *   *   *   *   *

The cross-examination was as follows:

"Q. All right, now, subsequent to that time—you just mentioned that you installed a Chlorinator, is that true?

"A. When I went up there?

"Q. Yes, in February?

"A. Yes, I hooked up the Chlorinator, I made the injection nozzle hook-up.

*   *   *   *   *   *

"Q. And you made a list of the corrective measures necessary—

"A. No, I did not make the list at that time.

"Q. Did you make a mental note, did you know what was to be done?

"A. I made a mental note to the effect that the filter plant didn't have a Flow Rate Indicator on it and that the chlorine wasn't hooked up and there was no permanent pipe installation on the face of the filter running back to the pool. It was night when we went out there and I did not go into details on the pool, which I should have, because when I returned at a later date I found to my sorrow that there was considerable work yet to be done."

*   *   *   *   *   *

On redirect examination he testified:

"Q. Well, now, Mr. Witt, will you tell the Court whether that pool was complete as far as your material was concerned in August of 1959?

"A. It was not completed at that time, the material that was required to complete the pool was not complete because of certain items that had not been installed that were required by state law.

*   *   *   *   *   *

"Q. And Mr. Loftin, the contractor, in compliance with the demand, authorized you to go up there and do whatever was necessary to complete your part?

"Q. In the letter specifically, Paul, referred to, this second paragraph that Mr. Newcombe was referring to, it states: 'in order that they will meet with the specifications of the contract.'

"A. Yes."

Obel L. Gregory, manager of the Cushing Country Club testified as follows:

\* \* \* \* \* \*

"Q. Do you recall a Flow Rate Indicator having been delivered to this job early in the construction period?

"A. Yes, sir.

"Q. Was that Flow Rate Indicator installed?

"A. No, it was not.

\* \* \* \* \* \*

"Q. Was a Flow Rate Indicator afterwards installed by Mr. Witt?

"A. Yes, sir.

"Q. Was that the one he testified to in February of 1960?

"A. That's correct."

Leo Davis, member of the board and chairman of the Swimming Pool Committee of the Cushing Country Club, testified:

\* \* \* \* \* \*

"Q. Now, had there been a flow meter brought out there previously?

"A. Yes, sir.

"Q. Do you know when it was removed?

"A. No, Sir, not the exact time.

"Q. Had it ever been installed?

"A. No, sir."

The above quoted evidence amply justifies the finding that the flow meter called for by the specifications had never been installed until February, 1960.

The general rule applicable in this case is found in 36 Am.Jur., pg. 98, Sec. 141, where the text reads:

"If the furnishing of material or the performance of some service is expressly required by the terms of the contract, the time for claiming a lien will commence to run from the date of furnishing such article or performing such service, although the article is furnished or the labor performed some time after the substantial performance of the contract, and it is trivial in character. \* \* \*"

The evidence establishes that this was not a repair job or the replacement of defective parts but was the installation of items required by the specifications and which had never been installed.

In the case of District Heights Apartments, Section D–E, Inc. v. Noland Company, Inc., 202 Md. 43, 95 A.2d 90, 39 A.L.R.2d 387, it is said in the body of the opinion:

"\* \* \* But where a claimant, after a contract is substantially completed, does additional work or furnishes additional material which is necessary for the proper performance of his contract, and which is done in good faith at the request of the owner or for the purpose of fully completing the contract, and not merely as a gratuity or act of friendly accommodation, the period for filing the lien will run from the doing of such work or the furnishing of such materials, irrespective of the value thereof. \* \* \*"

The headnotes in the case of Bartholomew v. James (Mont.), 246 P. 771, read in part:

"Court's finding of fact, having substantial evidence to uphold it, will not be disturbed on appeal.

"Mere lapse of time between the last items of work and material for a building and those preceding, while a circumstance of importance, is not conclusive that all were not furnished un-

der one contract, and did not constitute parts of a continuous open account.

"Whether all items of work and material for building were furnished under one contract, under a continuous open account, held one of fact.

"If all items of work and material for building relate to one transaction, account is continuous, and dates from last item, though statements of account were rendered at various times.

"Last item of work and material for building being contemplated by original plan, and not being subterfuge for securing lien, its date determines time for filing lien."

So much for the general principles of law as evidenced by opinions from other jurisdictions. Let us now turn to the decisions of this court.

In the early case of Joplin Sash and Door Works v. Oklahoma Presbyterian College for Girls et al., 36 Okl. 547, 129 P. 40, 43 L.R.A.,N.S., 158, the first paragraph of the syllabus reads:

"A written contract was entered into between G. Company, a contractor, and J., a subcontractor, whereby the latter was to furnish a certain list of building material, to be used in the construction of a college building for a third party. Prior to the completion of said building it was discovered by the contractor's foreman that a small list of materials called for in the original building plans and specifications had been omitted from the contract. These materials were of the same kind as those included in the original list, and, when the omission was discovered, were ordered of the subcontractor who shipped them to the contractor, 18 days after the last material included in the original list was furnished. No new contract was made. These materials were furnished during the progress of the work on the building, and were used therein, and reasonable charges made therefor; and all were included in one settlement with the contractor. Held, that all related to the one contract; that the furnishing of the additional materials did not constitute the transactions separate and distinct, or independent contracts, within the meaning of section 6153, Comp. Laws 1909, requiring that the subcontractor shall, within 60 days after the date upon which material was last furnished under the subcontract, file with the clerk of the district court, etc., a verified statement setting forth the amount due, etc.; and that the statement required being filed within 60 days from the date that the materials were last furnished, including the second list, was filed within time, and constituted in this regard a compliance with the statute."

In the case of Chickasha Cotton Oil Co. v. Standard Lumber Co., 175 Okl. 15, 52 P. 2d 816, the second paragraph of the syllabus stated:

"Where materials and supplies are furnished to be used for the same general purpose, as for the construction of a cotton gin, although such materials and supplies be ordered at different times, yet if the same form an entire whole, and are so connected as to show that the parties regarded the separate items of material furnished at different times as being a part of the entire account, and not constituting separate accounts, the furnishing of said materials in this manner will be considered as a single contract, and a lien filed within the statutory time after furnishing of the last item will relate back to the first purchase and cover all materials and supplies furnished."

Again in Mid-Co Pipe & Supply Co. v. Central Torpedo Co. et al., 127 Okl. 273, 260 P. 753, the first paragraph of the syllabus reads:

"The rule is settled in this jurisdiction that, where, as in this case, material is furnished to be used for the same general purpose, as for the development of an oil and gas lease, though

the material be ordered at different times, yet, if the separate parts form an entire whole, and are so connected as to show that the parties regarded the separate items of material furnished at different times as being a part of the entire account, and not constituting separate accounts, the furnishing of said material in this manner will be considered as a single contract."

We think all of these fortify the position of the plaintiff herein. However, the two most persuasive cases are Consolidated Cut Stone Co. et al. v. Seidenbach et al., 181 Okl. 578, 75 P.2d 442 and Liberty Plan Co. v. Francis T. Smith Lumber Co., Okl., 360 P.2d 500. In the first of these the tenth paragraph of the syllabus reads:

"Where a subcontractor furnishes material, all going to the one general purpose of constructing a building, though such material be ordered at different times, or under separate contracts, yet if the several deliveries are so connected together as to show that the parties had in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account may be considered as a unit, and a lien statement may be filed within the time limited after the last material was furnished."

In the body of the opinion the court said:

"The authorities do not seem always to have clearly distinguished as to when extras are supplemental to the original contract and therefore included within it, and when they constitute a new and separate contract. We believe, however, that the question as to whether the furnishing of extras in this case extended the time within which a lien might be filed for all materials furnished under the original contract is ruled by Joplin Sash & Door Works v. Oklahoma Presbyterian College for Girls et al., 36 Okl. 547, 129 P. 40, 43 L.R.A.,N.S., 158. The general rule therein announced is that, where material is furnished, all going to the same

general purpose, as the building of a house or any of its parts, though such material be ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be considered as a unit, or as being but a single contract. It has been urged in answer to this statement of the law that the extras cannot be regarded as being furnished under the original contract between the lien claimant and the contractor, and that therefore the decision declaring this rule is not an authority in point. But an analysis of the opinion and the authorities on which it is based will show that 'deliveries, even if made under separate contracts, if the work is continuous, will be considered as one, and the time limit for filing will date from the last item furnished', and that 'where a mechanic furnishes labor and material under different contracts which relate to similar kinds of work, and are in fact additional to the original contract, and are made before the work under that contract is completed, the services are regarded as continuous, and a statement may be filed within the time limited after the entire work is done, though the work under some of the contracts has ceased more than that time before the filing of the statement."

The latest holding of this court is in the second case, Liberty Plan Co. v. Francis T. Smith Lumber Co., supra. In that case, contract was made for the alteration of a building. The subcontractor furnished materials in June, July and August of more than a thousand dollars. The last of these items was furnished August 21, 1957. But on September 23, 1957, two quarts of glazing compound were furnished. A lien was filed December 20, 1957. The same contention was made in that case as here. In discussing the question of whether the furnishing of the glazing compound extended

the time, the court said in the body of the opinion:

"As revealed by the testimony of a workman who was in Hendrickson's employ, plaintiff furnished, on September 23, 1957, two quarts of glazing compound to be used for caulking windows and doors on the premises in question. The evidence tends to show that this work, which was admittedly performed at the specific request of Liberty's vice-president, constituted a necessary part of the contract to repair the garage apartment."

We are of the opinion and hold that this case is applicable to the instant litigation.

It is further ordered that the attorneys for plaintiff be allowed Two Hundred Dollars ($200.00) attorneys fee for services in connection with the appeal in this court.

Judgment affirmed.