FOURTH DIVISION

FILED: 2/8/01

No. 1-00-0786

ONSITE ENGINEERING & MANAGEMENT, INC., ) Appeal from the

d/b/a ONSITE ENVIRONMENTAL STAFFING, ) Circuit Court of

a Maryland Corporation, ) Cook County.

)

Plaintiff-Appellant, )

) 

v. )

) 

ILLINOIS TOOL WORKS, INC., 3635 TOUHY ) 

L.L.C., an Illinois Limited Liability )

Company, QST ENVIRONMENTAL INCORPORATED,) 

f/k/a ENVIRONMENTAL SCIENCE &    ) 

ENGINEERING, INC., a Corporation, ) 

) 

Defendants-Appellees, )

)

and )

)

SMITH TECHNOLOGY CORPORATION, f/k/a )

SMITH ENVIRONMENTAL TECHNOLOGIES ) Honorable

CORPORATION, and UNKNOWN OWNERS and ) Clifford L. Meacham,

NON-RECORD CLAIMANTS, ) Judge Presiding.

)

Defendants. ) 

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Onsite Engineering & Management, Inc., doing business as Onsite Environmental Staffing (Onsite), appeals from a circuit court order dismissing two counts of its first amended complaint against the defendants, Illinois Tool Works, Inc. (ITW), 3635 Touhy L.L.C. (3635 Touhy), and QST Environmental Incorporated, formerly known as Environmental Science & Engineering, Inc. (QST), and also from an order denying its motion for reconsideration of that ruling.  For the following reasons, we affirm.

Onsite is a Maryland corporation engaged in the business of temporary staffing services.  Pursuant to the Business Corporation Act of 1983 (805 ILCS 5/1.01 
et seq.
 
(West 1994)), Onsite obtained a certificate of authority to conduct business in Illinois on July 27, 1995.  On December 1, 1997, the Illinois Secretary of State revoked Onsite's certificate of authority for failure to file an annual report and failure to pay franchise taxes.  Onsite did not obtain reinstatement of its certificate until December 1, 1999.  In the interim, however, on March 31, 1999, Onsite initiated the instant action by filing a four count complaint seeking, 
inter alia
, to foreclose on a mechanics' lien pursuant to the Mechanics Lien Act (770 ILCS 60/0.01 
et seq.
 (West 1996)) and for other relief in connection with certain work performed on a construction project located in Lincolnwood, Illinois (hereinafter Lincolnwood Project).  QST served as the general contractor for the Lincolnwood Project, and ITW and 3635 Touhy own the property.

In its first amended complaint, Onsite alleged that, some time prior to December 1995, QST entered into a contract with Smith Technology Corporation, formerly known as Smith Environmental Technologies Corporation (Smith), pursuant to which Smith agreed to perform certain work on the Lincolnwood Project.  Thereafter, on December 19, 1995, Smith and Onsite entered into a "National Services Agreement" (hereinafter agreement), pursuant to which Onsite was to be Smith's sole source provider of temporary contract employees.  The agreement did not specify any particular type of work, project, or location of projects.  Rather, it provided only that Onsite would furnish contract employees as requested by Smith "from time to time".  Over the term of the agreement, Onsite had provided contract employees to Smith as requested for projects in numerous states, including Illinois.  In October 1996, Smith allegedly requested, pursuant to their agreement, that Onsite provide laborers to perform environmental remediation work for the Lincolnwood Project.  According to Onsite, it fulfilled its obligations under the agreement by supplying workers for this project from October 1996 through April 1997.  As of May 1997, Smith allegedly owed Onsite approximately $67,000 for its staffing services.  Onsite alleged that, despite repeated demands, Smith  paid only a fraction of that amount.  As a result, in June 1997, Onsite served the defendants with a subcontractor's notice and claim for a mechanics' lien in the amount of $46,984 pursuant to section 24 of the Mechanics Lien Act (770 ILCS 60/24 (West 1996)), and recorded the lien in the office of the Cook County Recorder.  

Counts I and II of Onsite's first amended complaint seek relief against Smith and are not the subject of this appeal.  In Count III, Onsite sought to foreclose on a mechanics' lien pursuant to section 24 of the Mechanics Lien Act.  Count IV was an action to obtain a judgment in the amount of $46,984 against QST, as general contractor, and ITW and 3635 Touhy, as owners of the property, pursuant to section 28 of the Mechanics Lien Act (770 ILCS 60/28 (West 1996)).

On August 3, 1999, ITW and 3635 Touhy filed a joint motion to dismiss Counts III and IV of the first amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1998)).  On the same day, QST filed a similar motion.  The two motions contained essentially the same arguments, namely that: (1) Onsite lacked the legal capacity to file suit due to the revocation of its certificate of authority and, as such, its complaint was a legal nullity that did not toll the two year statute of limitations set forth in the Mechanics Lien Act (770 ILCS 60/9 (West 1996)), which had expired in April 1999;  (2) Onsite's claims failed because a temporary staffing agency is not a subcontractor or secondary subcontractor entitled to a lien under the Mechanics Lien Act; and (3) Onsite failed to allege that any money was owed to Smith at the time Onsite gave its notice of lien to QST.

On November 3, 1999, the trial court granted the defendants' motions, finding that Onsite lacked the capacity to sue.  The trial court dismissed Counts III and IV of the first amended complaint and included a Rule 304(a) (155 Ill. 2d R. 304(a)) finding that there is no just reason to delay the appeal or enforcement of its order.  Thereafter, on December 3, 1999, Onsite filed a motion to reconsider, arguing that its certificate of authority had been reinstated by the Secretary of State on December 1, 1999, and that any lack of capacity to sue had been cured retroactively to the date of revocation on December 1, 1997.  Onsite also sought leave to file a second amended complaint in response to certain pleading defects raised in the defendants' motions to dismiss.  The trial court denied Onsite's motion on February 3, 2000, stating, 
inter alia
, that its claims were barred by the statute of limitations.  The trial court again included a Rule 304(a) (155 Ill. 2d R. 304(a)) finding.  This appeal followed.

Onsite argues that the trial court's orders, dismissing Counts III and IV of its first amended complaint and denying its motion for reconsideration, should be reversed.  It sets forth several arguments in support of this contention, including that it had the capacity to file suit and that it is a subcontractor entitled to a mechanics' lien.  We note that the parties devote a substantial portion of their briefs to the issue of Onsite's authority to file a complaint.  However, since we can affirm on any basis in the record (
McGuire v. Ameritech Cellular Corp.
, 314 Ill. App. 3d 83, 85, 731 N.E.2d 343 (2000)), we need address only one of the arguments raised by the parties; namely, whether Onsite, a temporary staffing agency, is a subcontractor or secondary subcontractor entitled to relief under the Mechanics Lien Act. 

Onsite contends that it is entitled to a lien because it furnished labor to Smith, thereby falling under the definition of subcontractor set forth in section 21 of the Mechanics Lien Act, which provides:

"Subject to the provisions of Section 5, every mechanic, worker or other person who shall * * * furnish or perform services or labor for the contractor, * * * shall be known under this Act as a sub-contractor, and shall have a lien for the value thereof, * * *."  770 ILCS 60/21 (West 1996).

Onsite finds further support for its position in section 22 of the Mechanics Lien Act, which provides:

"When the contractor shall sub-let his contract or a specific portion thereof to a sub-contractor, the party furnishing material to or performing labor for such sub-contractor shall have a lien therefor; and may enforce his lien in the same manner as is herein provided for the enforcement of liens by sub-contractors."  770 ILCS 60/22 (West 1996).

Onsite argues that Smith sub-let the labor portion of its contract with QST to Onsite and it is thus entitled to a lien. 

Conversely, the defendants assert that Onsite is not a subcontractor because the National Services Agreement entered into by Onsite and Smith is not a contract or subcontract specifically related to the Lincolnwood Project.  They thus conclude that Onsite is not entitled to a lien.  In support of their contentions, the defendants rely on, and urge us to adopt, the reasoning of 
Skillstaff of Colorado, Inc. v. Centex Real Estate Corp.
, 973 P.2d 674 (Colo. App. 1998), wherein the Colorado Court of Appeals addressed the question of whether a temporary staffing agency which provides a subcontractor with laborers is entitled to a mechanics' lien under Colorado law.  In 
Skillstaff
, the defendant, a general contractor for a housing development, entered into an agreement with a company called OMJR, whereby OMJR became a framing subcontractor for the project.  OMJR subsequently entered into an agreement with the plaintiff, a temporary personnel agency, pursuant to which the plaintiff was to provide laborers to OMJR.  The defendant paid OMJR, which in turn failed to pay the plaintiff.  As a result, the plaintiff paid its laborers and then filed a mechanics' lien.

As to the plaintiff's action to foreclose on its mechanics' lien, the trial court entered summary judgment in favor of the defendant.  The Colorado Court of Appeals affirmed, holding that Colorado's mechanics' lien statute protects those who perform labor, rather than those who merely furnish labor for the benefit of a contractor.  
Skillstaff
, 973 P.2d at 675.  Colorado law provides that "all persons of every class performing labor upon" a construction project shall have a lien.  
Skillstaff
, 973 P.2d at 676 (citing Colo. Rev. Stat. §38-22-101(1) (1997)).  The court opined that Colorado law does not distinguish between those who "furnish" and those who "perform" labor, but rather those who furnish labor pursuant to a contract to do some part of the work and those who merely furnish labor for the benefit of a contractor.  
Skillstaff
, 973 P.2d at 676.  The court explained that "those individuals who physically provide labor in the construction of a building may assert mechanics' liens, while those who provide laborers to a subcontractor without assuming any responsibility for performing the work on the project may not."  
Skillstaff
, 973 P.2d at 676.

We find the reasoning of 
Skillstaff
 to be sound.  At the heart of this matter is the relationship between Onsite and Smith.  A subcontractor, in general, is " '[o]ne who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance.' "  
Gunthorp v. Golan
, 184 Ill. 2d 432, 440, 704 N.E.2d 370 (1998) (quoting Black's Law Dictionary 1424 (6th ed. 1990)).  Like the plaintiff in 
Skillstaff
, while Onsite may have furnished labor to Smith, it did not do so pursuant to a specific sub-let of Smith's contractual obligations to QST.  Rather, Onsite furnished labor pursuant to a general National Services Agreement, which provides:

"ONSITE shall be the sole source provider, * * *, of Contract Employees as requested by [Smith] from time to time, which Contract Employees shall provide services under [Smith's] management and supervision."

The agreement defines "Contract Employee" as a person temporarily placed with Smith.  Pursuant to the agreement, Onsite has the status of an independent contractor, which pays the salary and benefits of its contract employees and then submits weekly invoices to Smith for the services provided by such employees.  Further, the agreement required Smith to indemnify Onsite from claims arising out of the acts or omissions of any contract employee because "ONSITE is providing supplemental staffing services only, and [Smith] is directing and supervising the Contract Employees who render these services".

Absent from the agreement is any reference to the Lincolnwood Project at issue.  Thus, like the plaintiff in 
Skillstaff
, Onsite had no contractual obligation to perform any work for this particular project.  Rather, its obligation was to refer employees to Smith for projects located in various states on a continuing, as needed, basis.  In order for Onsite to be able to claim a lien against the property at issue here, it would have had to contractually obligate itself to perform a portion of the work which Smith contracted with QST to perform on the Lincolnwood Project.  However, it did not and thus is not a subcontractor or secondary subcontractor within the meaning of the Mechanics Lien Act.

Because we conclude that Onsite is not a subcontractor or secondary subcontractor entitled to a mechanics' lien, we affirm the trial court's dismissal of Counts III and IV of Onsite's first amended complaint.  Therefore, there is no need to address the other arguments set forth in Onsite's appeal.

We turn next to the question of whether the trial court erred in denying Onsite leave to file a second amended complaint.  In its proffered second amended complaint, Onsite alleged that, in addition to the National Services Agreement, it entered into an oral contract with Smith pursuant to which it specifically agreed to furnish labor for ground remediation at the Lincolnwood Project.

Although courts are encouraged to freely and liberally allow pleadings to be amended (
Lee v. Chicago Transit Authority
, 152 Ill. 2d 432, 467, 605 N.E.2d 493 (1992)), litigants do not have an absolute right to file amended pleadings (
Barille v. Sears Roebuck & Co.
, 289 Ill. App. 3d 171, 179, 682 N.E.2d 118 (1997)).  Rather, the question of whether a party will be permitted to file an amended pleading is a matter committed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of that discretion.  
Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.
, 186 Ill. 2d 419, 432, 712 N.E.2d 330 (1999).

In order to determine whether a trial court has abused its discretion in denying a motion to file an amended complaint, we consider four factors, namely: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified."  
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 273, 586 N.E.2d 1211 (1992).  In this case, we find no abuse of discretion on the part of the trial court in denying Onsite leave to file its second amended complaint.

In its second amended complaint, Onsite, for the first time, premises its right to relief under the Mechanics Lien Act, not on having supplied labor in furtherance of the National Services Agreement, but rather because it furnished labor for ground remediation at the Lincolnwood Project pursuant to a subsequent oral contract with Smith.  Assuming for the sake of analysis that Onsite's second amended complaint adequately pleads the existence of this subsequent oral contract (but see 
Martin-Trigona v. Bloomington Federal Savings & Loan Ass'n
, 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028 (1981)), the Mechanics Lien Act claims based on that contract would be time-barred.

The Mechanics Lien Act claims set forth in Onsite's proffered second amended complaint, which are based on the alleged oral agreement to furnish labor specifically for the Lincolnwood Project, are subject to the two-year limitation period set forth in section 9 of the Mechanics Lien Act (770 ILCS 60/9 (West 1996)).  There is little question that Onsite moved for leave to file its second amended complaint more than two years after it furnished labor for the Lincolnwood Project.  Consequently, unless the filing of Onsite's proffered second amended complaint would relate back to the filing of its original complaint in this action, the Mechanics Lien Act claims set forth therein would be time-barred.

Section 2-616(b) of the Code of Civil Procedure allows the filing of an amended pleading to relate back to the date of the filing of the original pleading if the original pleading was timely filed and if the causes of action asserted in the amended pleading grew out of the same transaction or occurrence as was set up in the original pleading.  735 ILCS 5/2-616(b) (West 1998); 
Zeh v. Wheeler
, 111 Ill. 2d 266, 270-71, 489 N.E.2d 1342 (1986).  The rationale behind the same transaction or occurrence rule set forth in section 2-616(b) "is that a defendant will not be prejudiced by an amendment so long as [its] attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against [it]."  
Boatmen's National Bank of Belleville v. Direct Lines, Inc.
, 167 Ill. 2d 88, 102, 656 N.E.2d 1101 (1995).  In determining whether the relation back doctrine should be applied, we focus on the identity of the transaction or occurrence on which the causes of action asserted in the original and amended pleading are based.  
Zeh
, 111 Ill. 2d at 272-73.

In this case, the Mechanics Lien Act claims set forth in Onsite's proffered second amended complaint are based on its having furnished labor for the Lincolnwood Project pursuant to an alleged oral contract it entered into with Smith, requiring Onsite to furnish labor specifically for the Lincolnwood Project.  In its prior complaints, the plaintiff based its Mechanics Lien Act claims on its having furnished labor to Smith pursuant to the National Services Agreement.  Although in both cases Onsite furnished Smith with employees who performed services at the Lincolnwood Project, the contract under which those services were provided are not the same.  As a consequence, the Mechanics Lien Act claims asserted in Onsite's proffered second amended complaint are not based upon the same transaction as the Mechanics Lien Act claims asserted in its prior complaints.  We conclude that the filing of Onsite's proffered second amended complaint would not relate back to the filing of its original complaint and, therefore, the Mechanics Lien Act claims asserted therein would be time-barred.  For this reason, the trial court did not abuse its discretion in denying Onsite leave to file its proffered second amended complaint.

Affirmed.

HARTMAN, P.J., and SOUTH, J., concur.