2010 OK CIV APP 15

Izza Robert JONES, Jr., d/b/a Professional Plumbing Services, Plaintiff,

v.

PURCELL INVESTMENTS, LLC, Defendant/Cross–Plaintiff/Appellant/Cross–Appellee,

v.

Express Fire Protection, Inc., Third Party Defendant/Cross–Defendant/Appellee/Cross–Appellant.

No. 106,986.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 8, 2009.

Certiorari Denied Jan. 25, 2010.

Collier H. Pate, Stuart A. Knarr, Pate & Knarr, PC, Oklahoma City, OK, for Plaintiff/Appellant/Counter–Appellee.

Terry Stokes, Brandon Baker, McAlister, McAlister, McKinnis & Tuggle, P.C., Edmond, OK, for Defendant/Appellee/Counter–Appellant.

KENNETH L. BUETTNER, Judge.

¶ 1  Defendant/Cross–Plaintiff/Appellant/Cross–Appellee Purcell Investments, LLC, (Purcell) appeals from the trial court's March 27, 2009 Journal Entry of Judgment which granted summary judgment against Purcell and Defendant Kerr 3 Construction Group, LLC, in favor of Third–Party Defendant/Cross-Defendant/Appellee/Cross-Appellant Express Fire Protection, Inc. (Express). The trial court interpreted 42 O.S.2001 § 142.6 and found that Express's pre-lien notice was timely and therefore its mechanics' lien was valid and enforceable by foreclosure. The trial court dismissed with prejudice Purcell's claims against Express and overruled Purcell's Cross–Motion for Summary Judgment. Finally, the trial court awarded Express $6,159.00 in principal and $858.13 in interest, as well as $2,683.20 in attorney fees and $50.00 in costs. Express appeals the amount of attorney fees awarded. The record presents no dispute of material fact. The dispute is one of law: whether pre-lien notice required by 42 O.S.2001 § 142.6(B) must be sent no later than 75 days after the first or last date materials or labor were supplied. On *de novo* review of this first impression issue, we find the statute requires pre-lien notice to be sent no later than 75 days after the last day the lien claimant supplied labor, services, materials or equipment on the project. We therefore affirm summary judgment in favor of Express. We find no abuse of discretion in the trial court's decision on the amount of attorney fees, and therefore we also affirm that award.

¶ 2  Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 42 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled

to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. The parties agree on the facts material to this dispute. Where the facts are not disputed, an appeal presents only a question of law. *Baptist Bldg. Corp. v. Barnes,* 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. In its Petition in Error, Purcell has alleged the issue of law is the interpretation of 42 O.S.2001 § 142.6(B). We review issues of law *de novo.*[1]

¶ 3 The record shows that Purcell entered a contract with Kerr 3 for the construction of a strip mall on property owned by Purcell in McClain County. Kerr 3 subcontracted with Express, among other parties.[2] Express first supplied labor, services, materials, or equipment for the project July 17, 2006, and Express last supplied materials, services, labor, or equipment February 20, 2007. Express filed its Lien Statement with the McClain County Clerk April 10, 2007. The parties do not dispute that Express timely filed the lien statement within 90 days of the date on which material was last furnished, as required by 42 O.S.2001 § 143.

¶ 4 However, as a subcontractor, Express also was charged with providing a "pre-lien notice" to the property owner pursuant to *42 O.S.2001 § 142.6.*[3] Express mailed its Pre-Lien Notice to Purcell March 28, 2007 and it was received April 2, 2007. The parties purport to dispute whether Express sent the pre-lien notice within the time allowed by

---

1. The appellate court has the "plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, 932 P.2d 1100, n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

2. The record on appeal suggests this case included the following additional parties:

Defendants Rose Rock Bank, Kerr 3 Design Group, Inc., Binswanger, Robert Baxter Electric, Inc., and Luis Chaparas, d/b/a Deseret Construction; Third–Party Plaintiff Robert Baxter Electric, Inc., d/b/a Baxter Electric; Third-party Defendants Oklahoma Natural Gas Company, a Division of Oneok, Inc., Pendergraft Investments, L.L.C., d/b/a S & J Heating and Air Conditioning; Cross-defendants Dan's Custom Canvas Awnings, Inc.; Luis E. Chaparas, d/b/a Deseret Construction; First Service Companies, LLC; Bishop Paving Company, Inc.; Onsite Construction, Inc.; and Aluminum Specialties, Inc.

The Oklahoma Supreme Court entered its Order April 20, 2009, in which it directed Purcell to show cause why this appeal should not be dismissed for lack of a final, appealable order disposing of all the claims and parties, and directed that the caption of the case to read as styled above. Purcell responded with orders disposing of most but not all the parties. The Oklahoma Supreme Court issued its Order May 12, 2009, in which it directed this appeal to proceed.

The record on appeal does not indicate disposition of all claims by or against Robert Baxter Electric, Inc., d/b/a Baxter Electric; Oklahoma Natural Gas Company, a Division of Oneok, Inc.; Pendergraft Investments, L.L.C., d/b/a S & J Heating and Air Conditioning; Rose Rock Bank; and Kerr 3 Design Group, Inc.

3. Section 142.6 provides, in pertinent part (emphasis added):

A. For the purposes of this section:
1. "Claimant" means a person, other than an original contractor, that is entitled or may be entitled to a lien pursuant to Section 141 of Title 42 of the Oklahoma Statutes; and
2. "Person" means any individual, corporation, partnership, unincorporated association, or other entity.
B. 1. *Prior to the filing of a lien statement* pursuant to Section 143.1 of Title 42 of the Oklahoma Statutes, *but no later than seventy-five (75) days after the date of supply of material, services, labor, or equipment in which the claimant is entitled or may be entitled to lien rights,* the claimant shall send to the last-known address of the original contractor and owner of the property a pre-lien notice pursuant to the provisions of this section.
2. The provisions of this section shall not be construed to require:
a. a pre-lien notice with respect to any retainage held by agreement between an owner, contractor, or subcontractor, or
b. more than one pre-lien notice during the course of a construction project in which material, services, labor, or equipment is furnished.
A pre-lien notice sent in compliance with this section for the supply of material, services, labor, or equipment that entitles or may entitle a claimant to lien rights shall protect the claimant's lien rights for any subsequent supply of material, services, labor, or equipment furnished during the course of a construction project.
* * *
D. Failure of the claimant to comply with the pre-lien notice requirements of this section shall render that portion of the lien claim for which no notice was sent invalid and unenforceable.

§ 142.6, but the dispute is over when the time allowed by § 142.6 begins.

¶ 5 Whether the 75 days begins after services or materials are first supplied, after they are last supplied, or sometime in between, is unclear. At the hearing on attorney fees, the parties and the trial court agreed the statute was not clear.[4] "The test for ambiguity in a statute is whether the statutory language is susceptible to more than one reasonable interpretation. Wheth-er language is ambiguous is a question of law." *YDF, Inc. v. Schlumar, Inc.*, 2006 OK 32, ¶ 6, 136 P.3d 656. Because the mechanics' lien statutes provide for deadlines triggered by both the beginning and end of lienable service, yet § 142.6 does not include a specific modifier of "after ... supplied," we find § 142.6(B) is susceptible to more than one reasonable interpretation. Accordingly, we find the time limit imposed for providing pre-lien notice is ambiguous as a matter of law.[5] In construing ambiguous statutory lan-

4. In addition to the time period provided by § 142.6, Oklahoma's mechanics' lien statutes contain various deadlines, both before or after a lienable project begins, for giving notice of the lien and filing the lien statement (emphasis added):

42 O.S.2001 § 141:
Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, furnish material or lease or rent equipment used on said land for the erection, alteration or repair of any building, improvement or structure thereon ... shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances .... compliance with the provisions of this act shall constitute constructive notice of the claimant's lien to all purchasers and encumbrancers of said property or any part thereof, *subsequent to the date of the furnishing of the first item of material* or the date of the performance of the first labor ....

42 O.S.2001 § 142:
Any person claiming a lien as aforesaid shall file in the office of the county clerk of the county in which the land is situated a statement setting forth the amount claimed and the items thereof as nearly as practicable, the names of the owner, the contractor, the claimant, and a legal description of the property subject to the lien, verified by affidavit. Such *statement shall be filed within four (4) months after the date upon which material or equipment used on said land was last furnished or labor last performed under contract* as aforesaid; ....

42 O.S.2001 § 142.1:
No lien arising under the provisions of Sections 141 through 153 of this title which affects property presently occupied as a dwelling by an owner shall be enforceable unless, *prior to the first performance of labor or the first furnishing of materials* by the lien claimant, the original contractor, subcontractor, laborer, or materialman shall have provided to one of the owners a written notice ....

42 O.S.2001 § 143:
Any person who shall furnish any such material or lease or rent equipment used on said land or perform such labor as a subcontractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material, equipment and labor; ... by filing with the county clerk of the county in which the land is situated, *within ninety (90) days after the date upon which material or equipment used on said land was last furnished or labor last performed* under such subcontract, a statement, verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof, as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a legal description of the property upon which a lien is claimed.... The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said ninety (90) days, and such owner may pay such subcontractor the amount due him from such contractor for such labor, equipment used on said land and material, and the amount so paid shall be held and deemed a payment of said amount to the original contractor.

42 O.S.2001 § 143.1:
A. Within one (1) business day after the date of the filing of the lien statement provided for in Sections 142 and 143 of this title, a notice of the lien shall be mailed by certified mail, return receipt requested, to the owner of the property on which the lien attaches. The claimant shall furnish to the county clerk the last-known mailing address of the person or persons against whom the claim is made and the owner of the property. The notice shall be mailed by the county clerk.

5. In addition to the ambiguity revealed by the dispute at issue in this case, we also note that § 142.6(B)(1) provides that the pre-lien notice must be sent "prior to the filing of a lien statement pursuant to (§ 143.1), but no later than ... (75) days after the date of supply ..." Yet § 143.1 does not reference the filing of a lien statement. Instead, it is § 143 which provides for filing a lien statement by a subcontractor. And, § 142.6 defines "claimant" as "a person, other than an original contractor, that is entitled

guage, we look to the various provisions of the legislative scheme to determine the legislative intent and the public policy underlying that intent. *Id.*[6]

¶ 6 Mechanics' liens are statutory liens which protect the right to payment of those supplying material, labor, services, or equipment in the construction, alteration, or repair of any improvement on land. *First Nat. Bank of Pauls Valley v. Crudup,* 1982 OK 132, 656 P.2d 914, 917; 56 C.J.S. Mechanics' Liens, § 1. In Oklahoma, statutory provisions for mechanics' liens are codified at 42 O.S.2001 §§ 141–154. Because such liens are created by statute, they exist in derogation of the common law and therefore must be strictly construed. *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* 1980 OK 112, 614 P.2d 576, 579. However, once a mechanic's lien is found to exist, it will be liberally enforced. *Id.* "The purpose of the mechanic's & materialmen's lien statute is to protect materialmen and laborers, to secure payment of claims, and to give notice to the owners and to third parties of the intent to claim a lien for a definite amount. The recording requirement also protects innocent purchasers." *Davidson Oil Country Supply Co., Inc. v. Pioneer Oil & Gas Equipment,* 1984 OK 65, 689 P.2d 1279, 1280–1281.

¶ 7 Oklahoma law protects property owners by requiring subcontractors to give owners notice of mechanics' liens, which allows owners to withhold payment to the general contractor until they are sure the subcontractor will be paid by the general contractor.

The Oklahoma Supreme Court long ago explained that the lien and notice statute:

> fully provides protection to the owner by staying action by the contractor against the owner for 60 days against having impressed upon his property liens of submaterialmen for material furnished in the erection of a building. That the defendant did not avail itself of such protection against loss, but paid the contractor prior to the expiration of the 60 days from the time the material was furnished, for the payment of which the lien is invoked, cannot be considered as defeating the lien. 'The provisions of the mechanics' lien law should be interpreted so as to carry out the object had in view by the Legislature in enacting it, namely, the security of the classes of persons named in the act, upon its provisions being in good faith substantially complied with on their part.'
>
> It therefore clearly appears that any payment made to the original contractor by the owner, prior to the expiration of 60 days, is paid at his own risk, and if, during said time a subcontracting materialman files his lien and gives notice to the owner, as is admitted in this case, the lien of such subcontracting materialman is a valid one upon the lands and buildings embraced in the original contract. That such subcontracting materialman has a direct lien upon the condition of filing same and giving notice to the owner, ....

*W.E. Caldwell Co. v. John Williams–Taylor Co.,* 1915 OK ——, 50 Okla. 798, 150 P. 698, 699–700 (citations omitted).[7]

---

... to a lien pursuant to Section 141 ..." yet § 141 expressly applies only to the original contractor.

While the fact that other mechanics' lien statutes indicate the legislature is aware of the necessity for more precisely defining the event triggering the 75 days, the lack of clarity in § 142.6 makes the lack of definition less surprising.

6. "In interpreting a statute, legislative intent is of primary concern and the plain language of the statute usually controls. Rules of statutory construction should be used only when legislative intent cannot be ascertained from the language of the statute, as in cases of ambiguity or conflict with other statutes or the Constitution." *Bank of Oklahoma v. Ashley,* 2009 OK CIV APP 50, ¶ 13, 212 P.3d 507 (citations omitted).

7. The following excerpt elaborates on how the timing of lien statements protects the rights of the parties involved:

(A) The effect of an "absconding" general contractor on the subcontractor's lien amount. Let's first consider the problem of the "absconding" general contractor. By this, we mean a situation in which the owner pays the general contractor, but the general contractor does not pay the subcontractors, who then lien the owner's property.... First, the general contractor can abscond without paying the subcontractors, and the subcontractors can fairly assert that they are still unpaid, even if the owner can prove he paid the general contractor.

Let's use a simple example of a contract for $200,000. The general contractor uses sub-

¶ 8 Prior to 1977, mechanics' liens were granted to subcontractors who 1) had filed a lien statement within 90 days after the date labor or services were last provided and 2) had served written notice of the lien on the owner of the land. *42 O.S.1971 § 143.* Oklahoma courts held that this notice must be given "within a reasonable time" after filing the lien statement. *Curry v. Morgan,* 1958 OK 36, 321 P.2d 973, 974; *Union Bond & Investment Co. v. Bernstein,* 1914 OK 162, 139 P. 974, 40 Okla. 527.

¶ 9 In 1977, the legislature deleted the requirement of written notice to the owner from § 143 and instead included the notice requirement in a new statute. 42 O.S.Supp. 1977 § 143. The new section directed that *"on the date of the filing of the lien statement, ... a notice of such lien shall be mailed ... to the owner of the property on* which the lien attaches...." 42 O.S.Supp. 1977 § 143.1 (emphasis added). Section 143.1 also directed that the notice was to be mailed by the county clerk. *Id.* In 1979, § 143.1 was again amended to provide that notice must be mailed *"within one (1) business day after the date of filing of the lien statement ..."* 42 O.S.Supp.1979 § 143.1 (emphasis added).

¶ 10 In 2000, § 143.1 was changed more dramatically. The previous § 143.1 was renamed subsection A, and a subsection B was added. Section 143.1(B) provided that a lien claimant who was owed payment by a contractor was required to send written notice of the unpaid amount to the property owner and the contractor "not later than the tenth day of the third month following each month in which the unpaid" services or materials were furnished.

contractors and completes the job on Day 100. On Day 101 the general contractor presents his claim for $200,000 payment, and on Day 102 the owner pays him the full $200,000. The general contractor then absconds and does not pay the subcontractors—perhaps the general just disappears, or perhaps he takes bankruptcy. On Day 103 the subcontractors file their lien claims totaling $200,000.

This example poses two real questions:
(1) The owner has already paid the agreed $200,000 price for the building; is he now going to have to pay that same price a second time? Is this $200,000 building going to cost him $400,000?
(2) Was there some way the owner could have prevented this situation?
The answer to the first question is: "Yes, the owner is going to have to pay twice (a total of $400,000) for this building if he pays the general contractor on Day 3 and does not demand lien releases." Now, let's get to the second question: How does the owner prevent this? The law is very clear: if the owner pays inside 90 days after completion, and the general contractor then absconds with the money, the owner is liable to the subcontractors on their lien claims.... Thus, 42 O.S. § 143 allows the subcontractors to file their lien claims up to 90 days after the job is completed.... The statute then tells us that:
"The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days ..."
That same law also specifies that the owner is statutorily entitled to withhold the final payment from the general contractor until 90 days after work is completed; the statute states: "... no owner shall be liable to an action by such contractor until the expiration of said ninety (90) days ..."

... When the job is complete, the general contractor will be demanding payment; he will not want to wait 90 days. However, if the owner pays the general contractor on Day 102–as in our example—then thereafter, the general contractor can abscond with that final payment, and the subcontractors will have 88 more days to lien the owner's property. When the general contractor clamors for immediate payment on Day 102, the owner's response must be:
"We can do this two ways:
(1) I can wait until Day 91 to pay you, that way I am absolutely sure that no subcontractor is going to lien my property, or,
(2) You can bring me signed lien waivers from all of your subcontractors and I will give you your final payment today on Day 102, or as soon as you get the lien waivers.
In other words: No lien waivers? No payment before Day 91.
* * *
the owner can wait 90 days. If liens are filed during that 90 days, the owner deducts the lien amounts from the general contractor's check, and then issues joint-checks to the general and the subcontractors for the lien amounts.
It is important to remember that person at most risk from an "absconding" general contractor is the owner, not the general contractor and not the subcontractors. Consequently, it is only the owner who can act to protect himself from this risk. The owner either selects one of these methods of protection, or he exposes himself to the risk.
9792 NBI–CLE 1, National Business Institute, *Mechanics' Lien Law and Strategies in Oklahoma* (2004).

¶ 11 That language lasted only one year, when in 2001, § 142.6 was added, and the language from § 143.1(B) quoted above was deleted. Section 142.6 has not been amended since, nor has it been interpreted. The long-standing rule that notice to the owner is an inherent element of a mechanic's lien's validity has evolved from requiring notice within a reasonable time after the filing of the lien, to requiring notice at the time of the lien statement, and now to the deadline in § 142.6.[8] The trial court's interpretation of the statute effectively gives the owner 15 days notice before the lien statement must be filed-if the pre-lien notice is filed within 75 days and the lien statement is filed within 90 days, both from the last date lienable services or materials were supplied.

¶ 12 Both its name and the text of § 142.6 establish that a subcontractor's "pre-lien" notice must be filed before the lien statement.[9] As noted above, a subcontractor has up to 90 days *after the last date* materials or labor are supplied in which to file the lien statement. The Oklahoma Supreme Court has explained that "a subcontractor has a 'lienable claim' upon the commencing of work or furnishing of materials .... such lienable claim remains *inchoate* throughout the construction period and for 90 days after the date upon which the subcontractor last furnished materials or performed labor...." *Shawver & Son, Inc. v. Tefertiller*, 1989 OK 60, 772 P.2d 396, 399.

¶ 13 In its brief opposing summary judgment, Purcell relied on the language in § 142.6(B)(2), stating that a subcontractor need only file one pre-lien notice, which will "protect the claimant's lien rights for any subsequent supply of material, services, ... furnished during the course of a construction project." Purcell contended this language

established that the legislature intended for the pre-lien notice to be filed within 75 days of the date materials were first provided, based on Purcell's assertion that there would be no need for a pre-lien notice to remain effective for subsequent supplies if the notice could be filed after the materials were last supplied. At first blush, Purcell's contention appears reasonable. However, effectively, such an interpretation would require every person providing services or materials which could possibly be subject to a mechanic's lien to file a pre-lien statement, even if the subcontractor is being paid, as a precautionary measure in case payments later stop more than 75 days after labor or materials are first provided, but before the project ends. We will not presume the legislature intended for every subcontractor to give a pre-lien notice, regardless of whether he is being paid. If the legislature had such an intent, it could simply have included all subcontractors in the § 142.1 requirement of notice prior to first commencing work on owner-occupied dwellings. The 75 days after provision is superfluous if all subcontractors must give notice.

¶ 14 Additionally, even before the enactment of § 142.6, the Oklahoma Supreme Court noted that a mechanic's lien claimant is not required to file a separate lien statement for each order of materials. *Roofing & Sheet Metal Supply Co. v. Golzar–Nejad Khalil, Inc.*, 1996 OK 101, 925 P.2d 55, 59. The court noted its previous holding that where materials are ordered at different times, but all for use on one construction project, the orders form one account on which a lien statement may be filed within 90 days after the last material was furnished. *Id.* citing *Cushing Country Club v. Board-*

---

8. Statutes establishing deadlines for giving notice of liens vary widely among the states. For example, in Ohio, notice of a mechanics' lien must be filed within 21 days of *first* performing labor or providing materials (Ohio R.C. § 1311.05); in Florida and Minnesota, a notice of lien must be filed within 45 days after the lien claimant *first* furnished labor, services, or materials (Fla.S.A. § 713.06; Minn.S.A. § 514.011(2)(a)); in Texas, the mechanics' lien claimant must give notice to the owner not later than the 15th day of the second month following each month in which all or part of the claimant's labor was provided or material delivered (V.T.C.A. § 53.056); Pennsylvania requires a preliminary notice on or before the date the work is completed, along with a

formal notice at least 30 days before the lien claim is filed (49 P.S. § 1501); Missouri requires a subcontractor to give notice of the lien 10 days before filing the lien (V.A.M.S. § 429.100); and in Kansas, notice is given simply by mailing a copy of the lien statement to the owner, apparently contemporaneously with the filing of the lien (Kan.S.A. § 60–1103).

9. The language requiring the pre-lien notice to be filed before the lien statement would be superfluous if we accepted Purcell's contention that the pre-lien notice must be filed within 75 days of the date labor is first supplied.

*man, Co.,* 1963 OK 83, 381 P.2d 856. In the case of large projects, the subcontractor may have no way of knowing the lien amount, or whether one will be required, within 75 days of first providing services, before final payment is due.[10]

¶ 15 We next note that the lien notice requirement remains in § 143.1, which leads to the question whether the new provision for a "pre-lien notice" is a new, additional notice required, rather than a modification of the existing notice requirement. The title of the bill creating § 142.6 suggests that the bill addressed the existing notice requirements for liens and, as noted above, notice of liens has been required since long before § 142.6.[11] The title of the bill does not suggest that the legislature intended to create an additional notice, such that the "pre-lien" notice would be required, followed by the § 143.1 notice. Instead, we find § 142.6 simply elaborates on the long-standing requirement of notice of a mechanics' and materialman's lien. By contrast, § 142.1 provides for a specific type of notice, along with a separate deadline of before commencement of work, for potential liens against owner-occupied dwellings. That section has been interpreted as providing for a "specific pre-enforcement notice of potential materialman's liens." *C & C Tile and Carpet Co., Inc. v. Aday,* 1985 OK CIV APP 8, 697 P.2d 175.

¶ 16 The content of the § 142.1 notice required for owner-occupied dwellings differs dramatically from the content required in the § 142.6 pre-lien notice. Those differences also support a finding that the pre-lien notice is not analogous to the notice for owner-occupied dwellings and do not support a finding that the pre-lien notice is required early in the project, as the notice for owner-occupied properties is required before lienable labor or materials are first provided.

¶ 17 As noted above, in interpreting an ambiguous statutory provision we look to the purpose and intent of the statutory scheme. Our decision in this case is supported by the fact that none of the purposes of the mechanics' lien statutes would be served by adopting Purcell's interpretation that pre-lien notice must be given within 75 days after labor or materials were first supplied. Purcell's interpretation would serve only to render otherwise valid liens unenforceable despite timely notice to the owner, before the lien statement was filed, at a time when the owner remained able to protect his interests. Notice to the owner before the lien statement is filed protects the interests of owners and subcontractors. On the other hand, declaring a lien unenforceable solely by virtue of making notice of a lien due before payment is due (and indeed before it is known whether a lien will be necessary) serves only to benefit the property owner at the unnecessary expense of the subcontractor.

¶ 18 We recognize that the legislature may have intended to require pre-lien notice to be filed early in a project, as urged by Purcell. Nevertheless, because as noted above, historically, notice of a lien was required to be given at the time of filing the lien statement, along with the fact that owners are still protected by the timing rules in the mechanics' lien statutes, we do not find an intent to institute such a sweeping change in policy with § 142.6. This is particularly so because such change would not further the purpose of the lien statutes. In the Journal Entry, the trial court announced "(t)he applicable time to serve pre-lien notice is not prior to performing labor or supplying materials; but rather, no later than seventy-five (75) days after the last date of work." We affirm the trial court's finding that Express's pre-lien notice was timely under the statute. However, we clarify that under § 142.6(B), the time period for pre-lien notice is not 75 days after the last date of work; it is 75 days after the

---

10. And by its terms, § 142.6 excludes small projects (those whose aggregate claim is less than $2,500) and residential projects.

11. The title of the bill provides:
LIENS—NOTICE AND FILING REQUIREMENTS
An Act relating to liens; defining terms; requiring certain notice; construing act; excluding certain claims from notice requirements; providing for contents of notice; providing for notice; requiring original contractor to provide certain information and stating consequences; stating satisfaction of notice; requiring filing of certain affidavit; stating certain consequences; ...
2001 Okla. Sess. Law Serv. Ch. 21 (S.B. No. 112), Approved April 3, 2001.

lien claimant last supplied lienable services or materials on the job.

¶ 19 For the reasons expressed above, we conclude the trial court correctly interpreted § 142.6(B). The statute requires a pre-lien notice to be given no later than 75 days after labor, services, material or equipment have last been supplied by the lien claimant.

¶ 20 In its cross-appeal, Express complains that the trial court abused its discretion in the amount of attorney fees it awarded. Express was entitled to an award of fees because it prevailed in an action to enforce a lien. 42 O.S.2001 § 176; 12 O.S. 2001 § 936. Where a party is entitled to an award of fees, the determination of the amount is left to the trial court's discretion, and we will not disturb that finding absent an abuse of discretion. *Finnell v. Seismic*, 2003 OK 35, ¶ 8, 67 P.3d 339. In its Motion to Assess Costs and Attorney's Fees, Express sought an award of $8,277.25 in attorney fees.[12] Purcell objected, in part based on its claim that the amount of fees requested exceeded the amount of the lien. At the hearing on attorney fees, the parties stipulated that $89.42 was a proper blended hourly rate. In the Journal Entry, the court awarded $2,683.20, which was based on 30 hours at $89.44 per hour. The court indicated it reduced the amount to which the parties stipulated based on the amount of Express's lien. The trial court acted within its discretion in making the fee award. The trial court has discretion to award fees lower than the amount of hours actually billed after consideration of the factors announced in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659. *Southwestern Bell Telephone Company v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186.

AFFIRMED.

MITCHELL, C.J. (sitting by designation), and BELL, P.J., concur.

---

12. Express later amended its request based on supplemental fees expended and sought an award of $9,214.75.