2011 OK CIV APP 87

**STILLWATER NATIONAL BANK & TRUST COMPANY, a national banking association, Plaintiff/Appellee,**

**v.**

**Justin A. COOK, d/b/a Cook & Associates Engineering, Inc., and Cook & Associates Engineering, Inc., an Oklahoma corporation, Defendants,**

**PSA–Dewberry, Inc., a foreign corporation, Defendant/Appellant.**

**PSA–Dewberry, Inc., Third–Party Plaintiff,**

**v.**

**Broken Arrow Properties, L.L.C., Third–Party Defendant.**

**No. 108,209.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 1, 2011.

Certiorari Denied June 21, 2011.

---

David Funnell, Robert Ray Jones, Jr., Lytle Soulé & Curlee, P.C., Oklahoma City, Oklahoma, for Appellant.

J. Dillon Curran, Jared D. Giddens, Conner & Winters, L.L.P., Oklahoma City, Oklahoma, for Appellee.

LARRY JOPLIN, Acting Presiding Judge.

¶ 1 Defendant/Appellant PSA–Dewberry, Inc., a foreign corporation (Architect), seeks review of the trial court's order denying reconsideration of summary judgment previously granted to Plaintiff/Appellee Stillwater National Bank & Trust Company, a national banking association (Bank), on Architect's claim to foreclose its mechanics'/materialman's lien. In this accelerated review proceeding, Architect challenges the trial court's order as affected by errors of both law and fact.

¶ 2 Bank loaned a developer over $9,000,000.00 to purchase 39 vacant acres near Broken Arrow, Oklahoma, and, by contract dated February 5, 2007, the developer employed Architect to provide design services related to the proposed construction of a "one of a kind" shopping mall on the prop-

erty. Architect allegedly performed over $500,000.00 in such services.

¶3 To secure payment for the services rendered, Architect filed, on August 30, 2007, a mechanic's and materialman's lien on the property. Architect alleged that it last rendered labor and services about ninety (90) days prior on May 25, 2007.

¶4 Before commencement of any construction, the developer defaulted on the loan, and conveyed the property to Bank in lieu of foreclosure. Bank then commenced the instant action to quiet title.

¶5 Bank subsequently filed a motion for summary judgment. Bank adduced evidentiary materials showing that the developer had not improved the property in any substantial way beyond the clearing of a few trees, the erection of signs announcing the plan for development of the property, and some soil testing. Bank consequently argued that, absent work actually done on the land pursuant to plans prepared by Architect, Architect had no valid lien claim. *See, Stern v. Great Plains Federal Savings and Loan Ass'n.,* 1989 OK CIV APP 46, 778 P.2d 933. Bank also presented evidentiary materials argued to show that Architect did not timely file its lien within four months of the last labor or services provided as required by 42 O.S.2001 § 142. *See, e.g., H.E. Leonhardt Lumber Co. v. Ed Wamble Distributing Co.,* 1963 OK 17, 378 P.2d 771.

¶6 Architect responded. Architect argued that its lien was valid and enforceable, and that *Stern* was inconsistent with prior precedent so holding. *See, e.g., Midland Mortg. Co. v. Sanders England Investments,* 1984 OK 10, 682 P.2d 748; *Diffenbach v. H.H. Mahler Co.,* 1934 OK 170, 30 P.2d 907. Architect also presented evidentiary materials argued to show it last provided design services on May 18, 2007, and it filed its lien statement less than four months later on August 30.

¶7 Specifically relying on *Stern,* the trial court granted judgment to Bank. Architect sought reconsideration, which the trial court

denied. Architect appeals, and the matter stands submitted for accelerated review on the trial court record.[1]

### I. Standard of Review

■ ¶8 Ordinarily, "[w]hether the work performed under the statute is lienable is a question for the trier of the facts[,] [and] [t]he trial court's findings and judgment will not be disturbed unless they are clearly against the weight of the evidence." *Midland Mortg. Co.,* 1984 OK 10, ¶4, 682 P.2d at 750. Where the facts are undisputed, however, a lien claim may be decided on motion for summary judgment, and we review the trial court's decision under the *de novo* standard. *See, e.g., Jones v. Purcell Investments, LLC,* 2010 OK CIV APP 15, ¶2, 231 P.3d 706, 707. Further, "[w]here, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness." *Reeds v. Walker,* 2006 OK 43, ¶9, 157 P.3d 100, 106–107. (Footnotes omitted.) (Emphasis original.)

### II. Mechanics' and Materialman's Liens

■ ¶9 "Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, furnish material or lease or rent equipment used on said land for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements ... shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances." 42 O.S. § 141. "The purpose of the mechanic's & materialmen's lien statute is to protect materialmen and laborers, to secure payment of claims, and to give notice to the owners and to third parties of the intent to claim a lien for a definite amount." *Davidson Oil Country Supply Co., Inc. v. Pioneer Oil & Gas Eqpt.,* 1984 OK 65, ¶6,

1. *See,* Rule 13(h), Rules for District Courts, 12 O.S. Supp.2002, Ch. 2, App.; Ok.S.Ct.Rule 1.36,

12 O.S. Supp.2003, Ch. 15, App. 1.

689 P.2d 1279, 1280–1281. (Citations omitted.)

¶ 10 "[A] subcontractor has a 'lienable claim' upon the commencing of work or furnishing of materials pursuant to the subcontract." *In re Tefertiller,* 1989 OK 60, ¶ 14, 772 P.2d 396, 399; *Midland Mortg. Co.,* 1984 OK 10, ¶ 4, 682 P.2d at 749–750.[2] Ordinarily, the questions of when work was commenced or when materials were furnished is readily ascertainable because one can actually see the workers performing their craft, or the materials being delivered. "Commencement" of work is of particular importance because it imparts notice to the world of the existence of potential lienable claims. *See, e.g., Goebel v. National Exchangors, Inc.,* 88 Wis.2d 596, 277 N.W.2d 755, 762 (1979)[3]; *Gollehon, Schemmer & Associates, Inc. v. Fairway–Bettendorf Associates,* 268 N.W.2d 200, 201 (Iowa 1978).[4]

¶ 11 A question arises, however, whether a lienable claim has been commenced when the labor performed produces little appreciable, visible "improvement" to the land. For instance, in *Midland Mortg. Co.,* an engineering firm "surveyed the realty, set permanent iron pins and marked the boundaries of the property." 1984 OK 10, ¶ 2, 682 P.2d at 749. In addressing the first impression question of "[w]hether surveying by an engineering firm entitles it to a lien pursuant to 42 O.S.1981 § 141," the Supreme Court initially recognized that "the mechanic's and materialman's lien statute does not require that the labor performed for the erection of any building be part of the permanent construction of the building, or that it be continuous or visible." 1984 OK 10, ¶ 4, 682 P.2d at 749–750. The Supreme Court then held:

> [T]his Court has defined the improvement of land described in § 141 as including any and every character of improvement on realty. We find that the services performed by [the engineer/surveyor] constituted an improvement of the realty. Because these services were lienable, [the engineer/surveyor]'s lien has priority of the mortgage because the first work done on the land preceded the filing of the mortgage.

*Midland Mortg. Co.,* 1984 OK 10, ¶ 4, 682 P.2d at 750.

¶ 12 The Supreme Court thus implicitly recognized that the physical acts of surveying and setting permanent iron pins in the ground to mark the boundary of the property constituted an improvement of the realty. This makes sense because a physical examination of the property would reveal the work of the engineer in permanently marking the boundaries of the property.

¶ 13 In this respect, however, there is a distinct division of authority on the question of whether an architect possesses a lienable claim for services rendered. *See,* Simmons, "Architect's services as within mechanics' lien statute," 31 A.L.R.5th 664 (West 2011). "When architects or engineers drew plans which were used in construction, the courts both granted and denied liens." 31 A.L.R.5th 664, §§ 2(a), 6, 7(a), 8(a). "Where

---

2. "[A]ny person who, under oral or written contract performs labor or material for the improvement of land, has a lien which takes preference over all other liens which may attach upon the land after the date of the performance of the first labor on the land."

3. "It may be observed here, that the attaching to the realty of any material used in constructing a new building, or in making repairs, is the Commencement of such building or repairs within the meaning of the statute.... This rule is reasonable and just, in that it requires an open, visible act to fix and establish the precise time when the mechanic or material man shall have priority of lien over subsequent incumbrancers. Under this rule a person about to take a mortgage upon real estate may determine with absolute certainty, by an examination of the premises, whether his security is liable to be, or can be, impaired by liens of mechanics or material men under the statute. Any other rule might work great wrong and injustice." (Citation omitted.)

4. "The theory under which mechanic's liens are justified is that the improvement constitutes visible notice of the furnishing of labor or material. The reason upon which the statute is based is quite as apparent as its language. It is this: The fact that the building or improvement is being made is notice to the world, open enough for all to have warning of the mechanics and material men's rights. It is entirely competent for the legislature to so provide and to direct that all persons shall be chargeable with such notice for ninety days after the last item of labor or materials is furnished.'" (Citation omitted.)

plans were not used in construction, the courts again both granted and denied liens." 31 A.L.R.5th 664, §§ 2(a), 6, 7(b), 8(b). Where an architect's lien is denied, the courts generally reason that, without commencement of any actual work to improve the property pursuant to the architect's drawings, it cannot be said the architect has contributed in any way to the improvement of the property. *See, e.g., Mark Twain Kansas City Bank v. Kroh Bros. Development Co.,* 14 Kan.App.2d 714, 798 P.2d 511 (1990); *Branecky v. Seaman,* 688 S.W.2d 117 (Tex. App.1984); *Sullivan v. Thomas Organization,* 88 Mich.App. 77, 276 N.W.2d 522 (1979).

¶ 14 In the present case, there is no question but that Architect's plans were not used. In *Stern,* the Court of Civil Appeals analyzed the language of 42 O.S. § 141, Oklahoma's mechanic's and materialman's lien statute, and first held "that the services of an architect in the preparation of plans and specifications which are used in the work done on the land are improvements of land and are thus lienable claims under 42 O.S.1981 § 141." 1989 OK CIV APP 46, ¶ 5, 778 P.2d at 935. However, the Court of Civil Appeals also held:

> An architect's work need not be the actual work done *on* the land; however, to be lienable, it must be services which results in work being done *on the land.* In this case, Phases II and IV were never funded or constructed. Thus, Appellant's architectural services for Phases II and IV, as shown on the statement attached to his lien, were not used to improve this property and are not lienable claims under 42 O.S.1981 § 141.

*Stern,* 1989 OK CIV APP 46, ¶ 7, 778 P.2d at 936. (Emphasis original.)

¶ 15 We believe this is the correct rule to apply to claims by architects. That is to say, if the "improvement" of the land pursuant to the architect's plans has not commenced, it would be impossible to determine, from an inspection of the land, whether the land is liable to be, or can be, impaired by liens of mechanics or materialmen under the statute. To hold otherwise would expose a good faith purchaser, without observable commencement of work pursuant to the architect's plans, to the burden of a lien claim of which he had no notice, actual or constructive.

¶ 16 In the present case, it is undisputed that Architect and the developer entered into a contract for Architect's provision of more than $1,400,000.00 in engineering and architectural services for the construction of a shopping mall on the 39 acres financed by Bank. However, it is also undisputed that developer could not obtain further financing of the project, and no improvement of the land according to the architect's plans was ever accomplished by developer or any one else.

¶ 17 Under these circumstances, and absent actual improvement to the land pursuant to Architect's efforts, *Stern* announces the correct rule of Oklahoma law and holds that Architect possessed no valid enforceable lien on the property. The trial court properly granted judgment to Bank on this issue. The order of the trial court is AFFIRMED.

HETHERINGTON, J. (sitting by designation), concurs.

KENNETH L. BUETTNER, Judge, specially concurring.

¶ 18 I agree with the majority that the work of the architects under the facts presented is not lienable under 42 O.S. § 141. However, I would not adopt *Stern in toto,* because it is unnecessary to determine in this case whether an architect's work that is subsequently used to build on the property can be a lienable claim.