ADVANCED RESOURCE SOLUTIONS, LLC v. STAVA BUILDING CORPORATION



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ADVANCED RESOURCE SOLUTIONS, LLC v. STAVA BUILDING CORPORATION

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ADVANCED RESOURCE SOLUTIONS, LLC v. STAVA BUILDING CORPORATION
2019 OK CIV APP 28
Case Number: 116979
Decided: 04/15/2019
Mandate Issued: 05/15/2019
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2019 OK CIV APP 28, __ P.3d __

 

ADVANCED RESOURCE SOLUTIONS, LLC, an Arizona limited liability company, Plaintiff/Appellant,
v.
STAVA BUILDING CORPORATION, an Oklahoma corporation and MID-CONTINENT CASUALTY COMPANY, Defendants/Third-Party Plaintiffs/Appellees,
v.
MCDERMOTT ELECTRIC, LLC, an Oklahoma limited liability company, Third-Party Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

AFFIRMED

Ronald R. Tracy, RESOLUTION LEGAL GROUP, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Craig M. Regens, GABLEGOTWALS, Oklahoma City, Oklahoma, for Defendants/Third-Plaintiffs/Appellees

JERRY L. GOODMAN, JUDGE:

¶1 Advanced Resource Solutions, LLC (ARS) appeals an April 3, 2018, order granting summary judgment to Stava Building Corporation (Stava) and Mid-Continent Casualty Company (Mid-Continent). Based on our review of the record and applicable law, we affirm the order under review.

BACKGROUND

¶2 ARS is a temporary staffing company. On January 15, 2014, ARS and McDermott Electric, LLC (McDermott) entered into a contract for ARS to provide it with temporary laborers, such as licensed apprentice and journeymen electricians, for use on various commercial construction projects. McDermott used these laborers on a Luther-Walmart project (Walmart Project). Stava was the general contractor for the Walmart Project and McDermott was Stava's electrical subcontractor.

¶3 On March 29, 2016, ARS filed a petition, asserting it had provided McDermott with laborers for commercial construction on an open account from January of 2015 through June 4, 2015, that it had invoiced McDermott for the labor in the amount of $115,706.50, and that McDermott had failed to pay for the services. To secure payment, ARS executed and filed with the Oklahoma County Clerk a Mechanic and Materialman's Lien Statement on August 13, 2015, pursuant to 42 O.S.2011 and Supp. 2013, § 143 (ARS Lien). On January 19, 2016, Stava posted a Bond to Discharge Mechanic's Lien, No. 1014148, with Mid-Continent as surety.

¶4 Stava and Mid-Continent answered, generally denying the allegations. Stava and Mid-Continent further filed a third-party petition against McDermott, seeking an accounting.[1]

 

¶5 ARS filed a motion for summary judgment on July 25, 2017, asserting that as a temporary staffing company it was entitled to recover from the lien discharge bond as it was a supplier of labor. Thus, it was a proper lien claimant pursuant to Oklahoma's lien statutes. See generally, 42 O.S.2011, § 141 et seq. Stava responded, disputing ARS's assertion. Stava asserted that to come within the scope of the mechanics's lien statute, ARS must have "performed labor."[2] See 42 O.S.2011 and Supp. 2013, § 143.

 

¶6 On January 24, 2018, Stava filed a motion for summary judgment, asserting ARS was a professional employer organization (PEO) and did not "perform labor" as required under the lien statutes. Therefore, ARS, a supplier or provider of labor, was not within the class of persons entitled to assert a mechanics's lien in Oklahoma. ARS disagreed, asserting it was not a PEO but rather a temporary staffing company, as it was the direct employer of the licensed journeymen and apprentice electricians that worked on the Walmart Project. Thus, it was the employer that furnished labor within the meaning of the lien statutes and therefore a proper lien claimant.

¶7 By order entered on April 3, 2018, the trial court found that ARS was not within the class of persons entitled to claim a mechanic's lien under the Oklahoma statutes. Accordingly, the court granted Stava's motion for summary judgment and denied ARS's motion for summary judgment.[3] ARS appeals.

STANDARD OF REVIEW

¶8 An appeal from an order granting summary judgment is subject to de novo review. Shull v. Reid, 2011 OK 72, ¶ 3, 258 P.3d 521, 523. "In its re-examination of the trial tribunal's legal rulings an appellate court exercises plenary, independent and nondeferential authority." Bronson Trailers & Trucks v. Newman, 2006 OK 46, ¶ 5, 139 P.3d 885, 899.

¶9 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Davis v. Leitner, 1989 OK 146, ¶ 9, 782 P.2d 924, 926. When reviewing a grant of summary judgment, we must view all conclusions and inferences to be drawn from the evidentiary materials in a light most favorable to the party who opposes the motion. Id.

¶10 The dispositive legal issue in this case requires the interpretation of 42 O.S. § 143. Legal issues involving statutory interpretation are also questions of law, subject to de novo review. Raymond v. Taylor, 2017 OK 80, ¶ 9, 412 P.3d 1141, 1143-44 (citing Head v. McCracken, 2004 OK 84, ¶ 4, 102 P.3d 670, 674; Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652, 654). "[S]tatutes are construed to determine legislative intent in light of the general policy and purpose that underlie them." Troxell v. Okla. Dep't of Human Servs., 2013 OK 100, ¶ 4, 318 P.3d 206, 209.

ANALYSIS

¶11 In Oklahoma, statutory provisions for mechanic's and materialmen's liens are codified at 42 O.S.2011, § 141 et seq. Because these liens are created by statute, they exist in derogation of the common law and are strictly construed. Jones v. Purcell Investments, LLC, 2010 OK CIV APP 15, ¶ 6, 231 P.3d 706, 710 (citing Riffe Petroleum Co. v. Great Nat. Corp., Inc., 1980 OK 112, ¶ 5, 614 P.2d 576, 579). However, once a mechanic's or materialmen's lien is found to exist, it will be liberally enforced. Id. "The purpose of the mechanic's & materialmen's lien statute is to protect materialmen and laborers, to secure payment of claims, and to give notice to the owners and to third parties of the intent to claim a lien for a definite amount. The recording requirement also protects innocent purchasers." Jones, at ¶ 6, at 710 (quoting Davidson Oil Country Supply Co., Inc. v. Pioneer Oil & Gas Equipment, 1984 OK 65, ¶ 6, 689 P.2d 1279, 1280--1281).

¶12 On appeal, ARS contends the trial court erred by holding it was not within the class of persons entitled to claim a mechanic's lien under Oklahoma Statutes. ARS contends it is a proper lien claimant under § 143, as it supplied labor for the Walmart Project. Stava disagrees, asserting ARS did not perform labor as required under § 143.

¶13 Title 42 O.S.2011 and Supp. 2013, § 143 provides, in pertinent part:

Any person who shall furnish any such material or lease or rent equipment used on said land or perform such labor as a subcontractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, . . . from the same time, in the same manner, and to the same extent as the original contractor, for the amount due for such material, equipment and labor. . . .

¶14 Oklahoma has not addressed whether a temporary staffing company, which supplies skilled workers to a subcontractor, is within the class of claimants who may file a claim under § 143. The goal of statutory interpretation is to follow the intent of the Legislature. TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15, 20. We ascertain that intent from the legislative act in light of its general purpose and object. City of Bethany v. Public Employees Relations Bd., 1995 OK 99, ¶ 8, 904 P.2d 604, 609. If a statute is plain and unambiguous, no judicial construction is necessary; it is only when the intent cannot be ascertained from the text that rules of statutory construction are invoked. Yocum v. Greenbriar Nursing Home, 2005 OK 27, ¶ 9, 130 P.3d 213, 219. If possible, we construe the various provisions as a harmonious whole. City of Tulsa v. Smittle, 1985 OK 37, ¶ 12, 702 P.2d 367, 370.

¶15 In relevant part, § 143 provides that "[a]ny person who . . . perform[s] such labor as a subcontractor" is a proper lien claimant under the statute. While ARS furnished labor to McDermott, the Court finds ARS has not performed labor as a subcontractor and therefore fails to qualify as a proper lien claimant under § 143.

¶16 The court in Better Fin. Solutions v. Caicos Corp., 73 P.3d 424 (Wash.Ct.App. 2003), discussed the distinction between performing and furnishing labor. In Caicos, Caicos was awarded a construction contract. Caicos subcontracted the project's concrete work with MK Construction. MK entered into an agreement with Better Financial Solutions (BFS), a temporary labor provider. The BFS-MK agreement left control over the laborers' work to MK. BFS did, however, pay the laborers' wages, taxes and insurance, for which it received a 20% markup above these costs. BFS subsequently brought a claim against Caicos when it did not receive full payment. The trial court determined BFS was a subcontractor and thus a proper lien claimant under the state's statutory scheme.

¶17 On appeal, the appellate court reversed. The court rejected BFS's assertion it was a proper claimant under the state statutes because it furnished labor for the project.[4] The court drew a distinction between persons who actually perform labor or who supply provisions and supplies for performing labor with a person who furnishes individuals who then labor. "A person who furnishes individuals who will then actually labor does no act to bring himself within the protected class." Id. at 427. The court held BFS was not a proper claimant under the Washington lien statutes.

¶18 In the present case, under the contractor statute, § 141, any person who performs labor or furnishes labor, materials, or equipment under a contract to make improvements to real property shall have a lien on the real property for the value of that labor, materials, or equipment. However, under the subcontractor statute, § 143, the Legislature choose to limit potential lien claimants to those who actually perform labor or furnish materials or equipment. The Legislature did not include those who furnish labor. ARS merely furnished labor, licensed apprentice and journeymen electricians to McDermott, who then actually labored. Furnishing labor is not the same as performing labor.

¶19 We further find ARS is not a subcontractor under § 143. The statutory provisions for mechanic's and materialmen's liens do not define "subcontractor." In Welling v. Am. Roofing & Sheet Metal Co., 1980 OK 131, ¶ 4, 617 P.2d 206, 208, the Oklahoma Supreme Court defined "a sub-contractor [as] one who has entered into a contract, express or implied, for the performance of an act with a person who has already contracted for its performance." (Citations omitted).

¶20 In Onsite Engineering & Mgmt., Inc. v. Illinois Tool Works, Inc., 744 N.E.2d 928 (Ill. App. Ct. 2001), the court addressed an analogous situation. Onsite Engineering & Mgmt., Inc. (Onsite), a temporary staffing provider, contracted with Smith Technology Corp. (Smith) to provide contract employees. The contract did not refer to type of work, project, or location of projects. Smith contracted with a general contractor, QST, to perform work on an Illinois project.

¶21 Onsite subsequently filed suit seeking, inter alia, to foreclose on a mechanic's lien after Smith failed to pay for its services. The defendants sought dismissal of this claim, asserting Onsite was not a subcontractor or secondary subcontractor entitled to a lien under the mechanic's lien act. The trial court granted the defendants' motion.

¶22 On appeal, Onsite asserted it was a proper lien claimant as it was a subcontractor or secondary subcontractor who furnished labor to Smith.[5] The defendants disagreed, asserting Onsite was not a subcontractor because the contract between Onsite and Smith was not a contract or subcontract specifically related to the Illinois project.

¶23 In rejecting Onsite's assertion that it was a subcontractor, the court relied on Skillstaff of Colorado, Inc. v. Centex Real Estate Corp., 973 P.2d 674 (Colo. Ct. App. 1998). In Skillstaff, a temporary staffing provider, who had supplied laborers to a subcontractor, filed suit seeking to foreclosure on its mechanic's lien. Although the state's statute provided "furnish or supplies labor . . . or . . . performing labor," the court held the agency was not an entity which could assert a mechanic's lien. The court distinguished between "those who furnish labor pursuant to a contract to do 'some particular part of the work' and those who merely furnish labor for the benefit of the contractor." Onsite, at 932 (quoting Skillstaff, at 676 (quoting Kern v. Guiry Brothers Wall Paper Co., 153 P. 87 (Co. 1915)). "Thus, those individuals who physically provide labor in the construction of a building may assert mechanics' liens, while those who provide laborers to a subcontractor without assuming any responsibility for performing the work on the project may not." Onsite, at 932, (quoting Skillstaff, at 676).

¶24 The court ultimately agreed with the defendants, finding the issue to be the relationship between Onsite and Smith. The court noted a subcontractor is "[o]ne who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." Id. at 932 (citations omitted). Like the temporary agency in Skillstaff, the court stated that while Onsite furnished labor to Smith, it did not do so pursuant to a specific sub-let of Smith's contractual obligations to QST. Rather, Onsite and Smith's contract was silent regarding the Illinois project. Thus, Onsite had no contractual obligation to perform any work for this particular project. Id.

In order for Onsite to be able to claim a lien against the property at issue here, it would have had to contractually obligate itself to perform a portion of the work which Smith contracted with QST to perform on the Lincolnwood Project. However, it did not and thus is not a subcontractor or secondary subcontractor within the meaning of the Mechanics Lien Act.

Id.

¶25 The Court finds the analysis from Onsite persuasive. In the present case, the record provides ARS entered into a contract with McDermott to provide it with temporary laborers, i.e., licensed apprentice and journeymen electricians, for use on its various commercial construction projects. The contract does not refer to a particular project. Rather, ARS is supplying McDermott with laborers on an open account. Thus, ARS has not entered into a contract to perform any act with regard to the Walmart Project. Accordingly, ARS is not a subcontractor under § 143 and is not a proper lien claimant under the state statutes.

¶26 The April 3, 2018, order granting Stava and McDermott summary judgment is therefore affirmed.

¶27 AFFIRMED.

THORNBRUGH, J., and RAPP, J. (sitting by designation), concur.

FOOTNOTES

[1] By order entered on February 6, 2019, the accounting claim was dismissed with prejudice.

[2] Stava generally asserted ARS must have performed labor, furnished material, or leased or rented equipment to come within the scope of the statute, citing § 143.

[3] The order further provides that, "The Parties stipulate that this decision should apply with equal force to [Mid-Continent], such that Mid-Continent is entitled to summary judgment against ARS for the same reasons Stava is entitled to summary judgment against ARS."

[4] "The bond statute for contractors on public works projects, RCW 39.08.010, requires that the contractor 'pay all laborers, mechanics, and subcontractors and materialmen, and all persons who supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work.' The retainage statute, RCW 60.28.011, confers a lien in favor of '[e]very person performing labor or furnishing supplies toward the completion of a public improvement contract' against the contractor's retainage bond or the public body's retained amount. RCW 60.28.011(2). Under the retainage statute, a '[p]erson' is 'a person or persons, mechanic, subcontractor, or material-person who performs labor or provides materials for a public improvement contract, and any other person who supplies the person with provisions or supplies for the carrying on of a public improvement contract.' RCW 60.28.011(12)(b)." Caicos, 73 P.3d at 426.

[5] The relevant statutes provide:

"'Subject to the provisions of Section 5, every mechanic, worker or other person who shall . . . furnish or perform services or labor for the contractor, . . . shall be known under this Act as a sub-contractor, and shall have a lien for the value thereof, . . . .' 770 ILCS 60/21 (West 1996)." (Emphasis added).

"When the contractor shall sub-let his contract or a specific portion thereof to a sub-contractor, the party furnishing material to or performing labor for such sub-contractor shall have a lien therefor; and may enforce his lien in the same manner as is herein provided for the enforcement of liens by sub-contractors. 770 ILCS 60/22 (West 1996)."

Onsite Eng'g & Mgmt., Inc, 744 N.E.2d at 931.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 15, 231 P.3d 706, JONES v. PURCELL INVESTMENTS, LLC
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 146, 782 P.2d 924, 60 OBJ 2833, Davis v. Leitner
Discussed
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1995 OK 99, 904 P.2d 604, 66 OBJ 3071, City of Bethany v. Public Employees Relations Bd. of State of Okl.
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed
 2005 OK 27, 130 P.3d 213, YOCUM v. GREENBRIAR NURSING HOME
Discussed
 2006 OK 46, 139 P.3d 885, BRONSON TRAILERS & TRUCKS v. NEWMAN
Discussed
 2011 OK 72, 258 P.3d 521, SHULL v. REID
Discussed
 2013 OK 100, 318 P.3d 206, TROXELL v. OKLAHOMA DEPT. OF HUMAN SERVICES
Discussed
 1980 OK 112, 614 P.2d 576, Riffe Petroleum Co. v. Great Nat. Corp., Inc.
Discussed
 2017 OK 80, 412 P.3d 1141, RAYMOND v. TAYLOR
Discussed
 1980 OK 131, 617 P.2d 206, Welling v. American Roofing and Sheet Metal Co., Inc.
Discussed
 1984 OK 65, 689 P.2d 1279, Davidson Oil Country Supply Co., Inc. v. Pioneer Oil & Gas Equipment Co.
Discussed
 1985 OK 37, 702 P.2d 367, 56 OBJ 1099, City of Tulsa v. Smittle
Discussed
Title 42. Liens
 Cite
Name
Level

 42 O.S. 141, Right to Lien - Priority - Enforceability against Property - Constructive Notice
Discussed
 42 O.S. 143, Lien By or Through Subcontractor
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA